CENTRAL COAL & COKE COMPANY *v.* JOHN HENRY SHOE COMPANY.

Opinion delivered May 4, 1901.

1. TRESPASS—CUTTING TIMBER—ENHANCED VALUE.—Where a trespasser wilfully entered upon another's land, and cut and removed timber therefrom, and by his labor enhanced its value, one who innocently purchased the timber from such trespasser will be liable to the owner for the value of the timber with 6 per cent. interest from the date of the conversion, without deduction on account of the increase in value caused by the work and labor of such trespasser. (Page 303.)

2. EVIDENCE—HEARSAY.—Evidence of a witness, in an action for trees cut and converted into railroad ties, to the effect that he and two others went through the timber three abreast, and each noted in a book the number of trees cut, and that their figures, added together, showed that a certain number of ties were cut, was hearsay and inadmissible. (Page 304.)

3. APPEAL—DEFECTIVE TRANSCRIPT—DISALLOWANCE OF COSTS.—Where a transcript on appeal was not arranged in order, and the bill of exceptions, containing over 200 pages, was not indexed, the court, on a reversal, will direct that the costs of the transcript be not taxed against the appellee. (Page 305.)

Appeal from Little River Circuit Court.

WILL P. FEAZEL, Judge.

STATEMENT BY THE COURT.

The John Henry Shoe Company, a corporation organized under the laws of Louisiana, and Abbie McShea were the owners of certain timber lands in this state. In 1895 Gus Less and S. G. Watkins, partners doing business under the firm name of Gus Less & Co., wilfully and without right entered upon these lands, and cut timber therefrom, and converted it into railway ties. They afterwards sold the ties to the Central Coal & Coke Company, a Missouri corporation, engaged, among other things, in the business of buying and selling ties. The Coal & Coke Company took possession of the ties near where they were cut, and paid Less & Watkins for them, and then shipped the ties out of the state.

Afterwards the Shoe Company and Abbie McShea brought this action against the Coal & Coke Company for conversion of the ties and to recover damages.  There was a verdict and judgment in favor of plaintiffs for the sum of $2,000, from which the defendant appealed.

*W. H. Arnold* and *Estes & King,* for appellant.

The court erred in instructing the jury that appellee could recover the market value of the ties, irrespective of the motive or knowledge or good faith with which they were cut from the land or purchased by appellant.  Upon the difference of the rules as to wilful and unintentional trespassers, see:  55 Ark. 307; 37 Mich. 332; S. C. 7 Am. Rep. 124.  In the latter case only actual damages are recoverable.  32 Oh. St. 571; S. C. 30 Am. Rep. 630; 32 Mich. 311; S. C. 7 Am. Rep. 654; 3 Suth. Dam. 376; Cooley, Torts, 56.  But the former rule cannot apply where an innocent purchaser has come into the case.  32 Oh. St. 571; S. C. 30 Am. Rep. 629.  It was error to admit the hearsay testimony of Harkness and Watkins.

*Scott & Jones,* for appellees.

Appellees were entitled to the value of the ties at the date of their manufacture, and interest thereon, since they were made by wilful trespass.  44 Ark. 210; 55 Ark. 307; 65 Ark. 448; 106 U. S. 432; 55 S. W. 392; 9 Ark. 46; 33 N. E. 391; 23 Wend. 285; 3 Comst. 379; 32 Atl. 714.  The objection to the evidence of Watkins, being only general, cannot be sustained if any portion of it is proper.  65 Ark. 106; 25 Ark. 380; 48 Ark. 177.

RIDDICK, J., (after stating the facts).  This is an action for damages for the unlawful conversion of railway ties.  The evidence makes out a very clear case of willful trespass on the part of Less & Watkins, from whom defendant purchased the ties.  Less & Watkins had notice that the land from which the ties were cut belonged to the plaintiffs, and yet, without permission or authority from them, entered upon it with a large force of men, and cut the timber and converted it into ties.  Under these circumstances, it is clear that, being willful trespassers, they were liable to the plaintiffs for the full value of the ties at the time of the sale and conversion, and, had they been sued, would have been entitled to no reduction on account of labor and expense.  The rule would have been different had they been innocent of intentional wrong, the reasons for

which are fully explained in the opinion in a recent case decided by this court. *Eaton* v. *Langley,* 65 Ark. 448. But they were not innocent, and the question here for decision is whether the defendant, who purchased the ties from these trespassers, and then converted them to its own use, is entitled to any reduction in the damages on account of the increase in value caused by the work and labor of the willful trespassers. We must answer this question in the negative. The timber belonged to plaintiffs. The title to it was not changed by the trespass, or the conversion to cross ties. It still belonged, in its improved shape, to the plaintiffs. Had Less & Watkins, who knowingly and wrongfully put labor upon these ties, been sued, they, as before stated, would have been entitled to no allowance or reduction of damages on account of the labor expended or value added to the timber, and could convey no such right to the Coal & Coke Company. Admit that the company was an innocent purchaser; still it purchased property belonging to plaintiffs from those having no right to sell, it converted this property to its own use, and plaintiffs were by this conversion damaged to the extent of the value of the property at the time of the conversion.

The company, it will be noticed, did not perform any work and labor on these ties, nor add any value to them. Under these circumstances, we think the circuit judge correctly ruled that the measure of damages was the value of the ties at the time and place they were converted by the defendant company, with interest at 6 per cent. from date of conversion. *Woodenware Co.* v. *United States,* 106 U. S. 432; *White* v. *Yawkey,* 108 Ala. 270, 54 Am. St. Rep. 159; *Powers* v. *Tilley,* 87 Me. 34, 47 Am. St. Rep. 304; *Glaspy* v. *Cabot,* 135 Mass. 435.

The next contention is that the judgment should be reversed because it is said the trial judge admitted hearsay testimony tending to show the number of ties taken from the lands of plaintiffs. The only question of fact in the case about which there was any room for doubt was as to the number of ties which were taken by Less & Watkins from the lands of plaintiffs and sold to defendant. On this point the circuit judge permitted the plaintiffs to introduce the deposition of one Harkness, who testified that he went over plaintiffs' land with three men, and estimated the number of ties taken therefrom. The witness said that they "took the woods three abreast." "In making our estimate," he said, we "would go along, and each one carried a book, and marked therein each tree cut,

as we came to it, with the letters 'N. 2,' meaning the trees cut in 1896 and 1897, and with 'O' for old, meaning the trees that had been cut in 1895, and from these, placed together, I found that there had been cut but 14,700 ties, of which 4,700 had been cut in 1896 and 1897."

Now, counsel for appellee contends that the witness did not, by this language, mean that he put the books together carried by the different men, but that by "putting the trees together," or, in other words, he added the different entries in his own book, and determined the number of ties in that way. But it seems to us that the natural import of the language is that each of them carried a book in which they entered each tree cut as they came to it, and that, by putting the entries in their books together, the witness ascertained the number of ties cut. If we concede that the witness meant that he "put the trees together," as counsel contend, the language he used does not show that he measured each of the trees, but leaves it uncertain whether he relied altogether upon his own masurements, or in part upon measurements made by his assistants. It was for plaintiff, who introduced the deposition of the witness, to show that the witness referred only to his own entries or to those concerning the correctness of which he had a personal knowledge. He did not do this, and the language is nowhere explained, and we think the court should have excluded it. The same objection was made to portions of the deposition of S. G. Watkins, introduced by plaintiff. Watkins testified that, from the reports of men hired by himself and Less to work in the woods, he understood that about 12,000 ties came from the lands of plaintiffs. This was plainly hearsay. The defendant in apt time objected to these portions of the depositions of Harkness and Watkins,. and they should have been excluded. In refusing to do so, we think the trial judge committed an error prejudicial to the appellants.

Our attention has been called by counsel for appellees to the state of the transcript in this case. It would seem, to quote the language of counsel, "that some sudden and severe wind blew the leaves of the transcript apart, and that when they were picked up no attempt was made to arrange them in proper order before they were fastened in the record." The pages are numbered consecutively as they are placed in the record, thus showing that they were wrongfully arranged by the clerk, or some one for him before having the numbers placed on them. In addition to this, the bill

S C—20

of exceptions, containing over two hundred pages, is not indexed. A record in such a confused shape without an index adds greatly to the labors of both counsel and court. It is the duty of the appellant to see that not only a complete, but a correct and orderly, transcript is filed in this court. If he submits his case upon a transcript such as this one, we have the discretion, if we choose to consider it, not to permit the costs of same to be taxed against the other party, in the event the judgment below is reversed. We are of the opinion that it is proper to make such an order in this case, and therefore direct that no costs be taxed against the appellee for the making of the transcript filed here.

For the error indicated, the judgment is reversed, and new trial granted.