## UNITED STATES *v.* FLINT LUMBER COMPANY.

### Opinion delivered July 6, 1908.

1. TRESPASS—CUTTING TIMBER—MEASURE OF DAMAGES.—Where the timber of another is cut by inadvertence or mistake, the measure of damages is the value of the timber when first taken; but if a wilful trespass is committed, the trespasser is liable for the full value of the property, without deduction for labor or expense. (Page 83.)

2. INSOLVENCY—PRIORITY OF UNITED STATES.—Under Rev. St. of U. S. § § 3466, 3467, in winding up the estate of an. insolvent person or corporation, claims in favor of the United States are entitled to priority. (Page 84.)

Appeal from Yell Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

Proceedings were instituted in the Yell Chancery Court for the Danville District by J. W. Eldridge against the Flint Lumber Company to wind up its affairs on account of its insolvency, and W. J. Kelley was appointed receiver. Afterwards, on the 6th day of August, 1906, appellant was allowed to intervene in the suit.

The intervention alleges that the S. W. ¼ of sec. 30, Twp. 6 N., R. 22 West, on and prior to the 10th day of June, 1902, was vacant land of the United States and subject to homestead entry at the land office of the United States at Dardanelle, Arkansas. That on said day one George Gamey, at the instance and request of said Flint Lumber Company, with the intent of defrauding the United States out of the pine timber growing upon said lands, duly filed as required by law his application, under section 2289 of the Revised Statutes of the United States, to enter said lands. That said George Gamey and said Lumber Company, in violation of the laws of the United States regulating homestead entries, cut and removed from said lands 350,-000 feet of pine logs, which were cut into lumber by the said Lumber Company. That the lumber was sold and the proceeds appropriated to the use and benefit of the said Lumber Company.

The Lumber Company filed its answer, which in substance was a general denial of the allegations of the intervention.

The facts are as folows: Dailey B. Henson testified that he was acquainted with John W. Eldridge, Harry B. Daniels, J. W. Whitehead and George Gamey. That he heard both Eldridge and Daniels speak of getting timber from Gamey. That he heard Daniels say that the Flint Lumber Company had furnished Gamey the money with which to make his homestead entry, with a contract or understanding that the Lumber Company was to get the timber off of the land.

J. M. Hall testified that he was acquainted with the persons mentioned by the witness Henson. That he heard Whitehead say that the Flint Lumber Company had furnished Gamey the money to make his homestead entry. That it was his understanding from Whitehead that the Lumber Company had bought the timber, and that it had it cut and hauled to the mill. That, while the timber was being cut, he understood from Gamey that he stayed on the land, and that he worked at the mill of the Lumber Company. That Gamey also told him that the Lumber Company furnished him the money to make the homestead entry. That the Lumber Company bought the timber on the land and had had it cut and taken to its mill.

A. R. Stafford testified that he knew all the above named persons. That he lived on the adjoining tract to the Gamey

homestead. That a short time after Gamey made his homestead entry he moved in a small house that Majors, who formerly homesteaded the land, had built. That all the merchantable timber was cut off the land. That as soon as the timber was cut and removed from the land Gamey left and has never returned. That Gamey had two pieces of ground fenced, where he had some truck patches, and that he judged they contained 5 or 6 acres.

J. A. Caldwell testified that he was acquainted with all the above named persons and worked at the mill during the time the logs were cut and removed from the Gamey homestead. That he thinks Gamey and his brother cut the timber, and that Gamey's brother, Levy Bryant and Marion Crowder hauled the logs to the mill. That he understood that Gamey's brother, Crowder and Bryant were at the time working for the Flint Lumber Company .

E. E. Weir testified that he knew all the parties above named. That he was manager of the Flint Lumber Company. That he never heard Eldridge say anything about the timber from the Gamey homestead. That Eldridge sold out his stock before much of the timber was taken from it. That, after the Flint Lumber Company purchased the mill, both Daniel and Whitehead looked over the timber they owned and also other timber in the vicinity of the mill that they expected to saw. That in doing this they looked over the timber on the Gamey homestead. Whitehead was the president of the Flint Lumber Company.

The testimony also shows that 225,000 feet of pine logs were cut and removed from the said land to the mill of the Flint Lumber Company. That it sawed the logs into lumber. That the value of the logs in the tree was $1.00 per thousand. That it cost $1.75 per thousand to haul the logs to the mill of the said company. That the market value of lumber at the time the timber was taken was $7.00 per thousand.

This was all the evidence.

The court rendered a decree in favor of the intervener for the sum of $225, the value of the logs in the tree with interest thereon at the rate of six per cent. from the 1st day of January, 1903; found that it had priority over any other claim allowed in the case.

The intervener has appealed.

*James K. Barnes* and *L. W. Gregg,* for appellant.

Lands entered for a homestead continue to be the property of the United States until final disposition thereof by the land department, and one who enters a homestead has no right to cut and remove any timber except such as is necessary to clear the land for cultivation, etc. The parties in this case are shown to have been wilful trespassers, and appellant is entitled to judgment for the full value of the timber. 159 U. S. 491; 167 U. S. 178; 191 U. S. 84; 19 Wall. 591; 106 U. S. 432; 44 Ark. 210; 55 Ark. 307; 69 Ark. 302; U. S. Rev. Stat. § § 3466, 3467; 31 Fed. 705; 9 Pet. 182; 44 Fed. 57.

*Priddy & Chambers,* for appellees.

Under proper regulations, an entry man may dispose of certain timber on his homestead, and an understanding with the purchaser to that effect would not make the latter a willful trespasser in any sense.

If it be conceded that Gamey acted willfully and with intent to defraud the Government, there is no evidence that appellee acted with like bad faith, but, on the contrary, it is shown that it quit cutting the timber at the first intimation it received that Gamey might not have the right to sell as much timber as he was selling. 192 U. S. 524; 167 U. S. 178.

HART, J., (after stating the facts). The amount of the liability in this case depends upon the fact of whether or not George Gamey and the Flint Lumber Company were wilful trespassers acting in bad faith and for that reason ought to suffer some punishment for their depredation. *Central Coal & Coke Co. v. John Henry Shoe Co.,* 69 Ark. 302.

In the cases of *Pine River Logging Co.* v. *United States,* 186 U. S. 279, and of *Woodenware Company* v. *United States,* 106 U. S. 432, the rule is thus stated: The court held that where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; and that, upon the other hand, if the trespass be wilfully committed, the trespasser is liable for the full value of the property. This rule was approved and followed in the case of *United States* v. *Anthony Railroad Co.,* 192 U. S.

524, the court saying that although, under the facts of that case, the defendants did not act under a mistake, meaning that the facts touching the status of the timber were known to them, yet what was done was in the belief that the cutting was legal, after having taken the advice of counsel on the question.

In the present case there is no attempt to justify the acts done. None of the persons who were guilty of the trespass were witnesses in the case. No excuse is given or attempted to to be given for not taking their testimony. A careful considera- tion of the testimony impels us to the conclusion that a clear preponderance of the evidence shows that the homesteader and the lumber company deliberately formed a design to enter the lands ostensibly for homestead purposes but in reality for the purpose of denuding the land of its timber for the benefit of the Flint Lumber Company, and that such design was carried out.

The Lumber Company furnished the money for making the homestead entry. Only two little patches, comprising 5 or 6 acres, were cleared, and this was only cultivated for one season. No other permanent improvements were made. There was a small box house already on the land. It was moved to the point nearest the mill site of the Lumber Company. Gamey abandoned the land as soon as it was stripped of the timber. He was in the employment of the Lumber Company during the whole time he resided upon the land. All the facts and circum- stances adduced in evidence show a concerted plan between him and the Lumber Company to get possession of the timber and the lands by a pretended entry of Gamey for homestead purposes.

The decree of the chancellor was correct in so far as it holds that the claim of the intervener was prior to the other claims allowed. Sections 3466 and 3467, Revised Statutes of United States; *United States* v. *Barnes,* 31 Fed. Rep. 705; *Field* v. *United States,* 9 Peters, 182; In re *Vetterlein,* 44 Fed. Rep. 57.

Reversed and remanded with directions to enter a decree in accordance with this opinion.