MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* DANIELS.

Opinion delivered March 13, 1911.

1. WITNESSES—TESTIMONY OF PHYSICIAN—PRIVILEGE.—Under Kirby's Digest, § 3098, providing that no person authorized to practice physic or surgery 'shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician," the fact that a patient waived the privilege as to a physician who once treated him will not authorize the opposing side to call another physician who treated the patient at another time for the same disease. (Page 356.)

2. SAME—PRIVILEGED COMMUNICATION—IMPEACHMENT OF PARTY.—Where plaintiff testified that physicians who treated her in 1907 had not treated her for a certain disease, it was not competent over her objections to contradict her testimony by introducing the physicians and proving that they treated for such disease, as the patient alone is authorized to waive the objection to such testimony. (Page 358.)

3. EVIDENCE—EXPERT TESTIMONY—FORM OF HYPOTHETICAL QUESTION.—A hypothetical question addressed to an expert witness need not embrace all the facts which the testimony tends to prove. *Ince* v. *State,* 77 Ark. 426, followed. (Page 359.)

4. SAME—FORM OF HYPOTHETICAL QUESTION.—The form of a hypothetical question is within the discretion of the trial court, who should see that the facts upon which they are based are fairly stated. (Page 360.)

5. APPEAL AND ERROR—HARMLESS ERROR.—The court's refusal to permit the court stenographer to testify from his notes what the testimony of the plaintiff was upon a former trial of the case was not prejudicial where there was no material difference between the testimony

of plaintiff given upon the second trial and the transcript of the stenographic notes of her testimony upon the former trial. (Page 360.)

6. DEPOSITIONS—TAKING UPON INTERROGATORIES.—Under Kirby's Digest, § 3176, providing that "a party to whom more than three days' notice to take a deposition out of the State is given may, by notice to the adverse party or his attorney, served in one day after the service of the first notice, require the deposition to be taken upon interrogatories," the method of taking the deposition upon interrogatories is governed by section 3178 and the following sections of Kirby's Digest. (Page 361.)

7. DAMAGES—PERSONAL INJURIES—PREVIOUS DISEASED CONDITION.—Where a female passenger was injured by a fall in alighting from a car, an instruction that, although before the alleged injury she was suffering from the same trouble which would eventually have brought about her present condition, still if her fall was caused by defendant's negligence, and such fall augmented her diseased condition and caused her to suffer pain, the jury should assess her damages at a sum commensurate with the pain so caused, was not erroneous. (Page 362.)

8. INSTRUCTIONS—GENERAL OBJECTION.—A general objection is insufficient to call attention to the mere phraseology of an instruction. (Page 362.)

9. SAME—WHEN HARMLESS.—An instruction which imposes too high a degree of care upon the carrier towards a passenger was not prejudicial where other instructions properly defined the degree of care in such case, and the real issue under the evidence was as to whether plaintiff was injured in alighting from defendant's train, and not the degree of care exercised by defendant toward plaintiff. (Page 363.)

Appeal from Boone Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

*W. B. Smith* and *J. Merrick Moore,* for appellant.

1. Where the plaintiff testifies to ailments alleged to have resulted from an accident and attributes the same to such accident, and introduces the testimony of a physician who treated her after the accident, who likewise attributes her diseased condition to such accident, she, by introducing such testimony, waives the right to have considered as privileged communications to, and discoveries made by, physicians who treated her before the alleged accident for the same disease. N. Y. Code, § § 834-836; Kirby's Dig. § 3098; 4 Wigmore on Ev. § 2380, pp. 3350, 3351; *Id.* p. 3352; *Id.* § 2390; 39 Mich. 606; 89 Mo. App. 604; 40 Hun (N. Y.) 441, s. c. affirmed, 110 N. Y. 643; 148 N. Y. 88; 104 N. Y. 352, 353; 10 N. Y. Supp. 159; 16 *Id.* 536; 106 N. Y. 306; 27 N. E. (Ind.) 1111.

2. Where the testimony of the complaining witness varies from that given on a former trial, and the memory of the stenographer who took notes of the testimony given at the former trial fails, the notes taken by him at such former trial may lawfully be admitted for the purpose of contradicting testimony of the complaining witness given at the second trial. Greenleaf on Ev. § § 436, 437; Wigmore on Ev. § 735; 56 Vt. 426; 2 *Id.* § § 1286, 1325, 1330; 35 S. C. 549; 50 Pac. 445; 74 N. W. 146; 78 N. W. 1046; 61 S. W. 719; 97 S. W. 496; 35 Pac. 621; 60 N. E. 685; 52 N. W. 247; 69 S. W. 487; 68 N. W. 428; 56 Pac. 861; 96 Mich. 486; 92 N. W. 1014; 61 N. E. 716; 71 Pac. 249.

3. The court erred in suppressing the deposition of E. L. Routh. The provisions of sections 3178-3180, Kirby's Digest, apply to depositions taken upon order of court, *i. e.,* upon a commission under order of the court. Sections 3166-3176, inclusive, prescribe the mode of taking depositions upon notice, etc.

4. The fourth instruction given is erroneous. The second instruction is also erroneous in that it is inconsistent with other instructions given, and because it implies a degree of care in assisting passengers from trains which the law does not require. It is abstract. 85 Ark. 117.

*W. F. Pace* and *Troy Pace*, for appellee.

1. Appellee's testimony was not a waiver of her right to object to the testimony of phyiscians who had treated her prior to the accident, and such testimony was properly excluded. 82 S. W. 95-6; 10 L. R. A. 36.

2. Where a stenographer does not remember the testimony of a witness given at a former trial, he will not be permitted at a second trial to read from his stenographic notes the testimony of such witness for the purpose of contradicting or impeaching the witness. Kirby's Dig. § 3138; 66 Ark. 546-550.

3. There was no error in suppressing the deposition of E. L. Routh. Section 3178, Kirby's Digest, provides the only method in which depositions may be taken upon interrogatories, except by agreement. Code, § § 622, 629, 630, 631.

4. In propounding a hypothetical question, it is not necessary that the question embrace all the facts which the testimony tends to prove, but the questioner may select the undisputed

facts, or such facts as he conceives to be established by the evidence, and predicate his question upon them.   77 Ark. 426; 87 Ark. 201.

5.   The fourth instruction is correct.   91 Ark. 343.   If there was any objection to the wording of the instruction, it was the duty of appellant to call attention thereto by a specific objection. 90 Ark. 108-112; 78 Ark. 22; 83 Ark. 61; 88 Ark. 204.

If there was any error in instruction 2, it was cured by instruction 12 given at appellant's request.   67 Ark. 531; *Id.* 1; 69 Ark. 558; 74 Ark. 431; *Id.* 377; 75 Ark. 260-261.

FRAUENTHAL, J.   This was an action instituted by Mattie Daniels, plaintiff below, to recover damages for personal injuries which she alleged she sustained in alighting while a passenger from one of defendant's trains at the station of Batavia, Ark. She alleged that when she was descending the steps of the coach to the depot platform the conductor in charge of the train took hold of her arm and carelessly and negligently jerked her, causing her to fall to the depot platform; that in falling she struck her knee on the edge of the platform, and twisted her body to such an extent that it resulted in a prolapsus of the uterus.   The defendant denied all allegations of negligence attributed to it or its employee, and denied that plaintiff had sustained any fall, alleging that the condition of her womb was due to a displacement which she had sustained long prior to the alleged injury.

There was a sharp conflict in the evidence on the question of whether the plaintiff fell as she descended from defendant's train at Batavia, and also as to the cause of the condition of her uterus.   The testimony on the part of the plaintiff tended to prove that on February 27, 1909, she became a passenger on one of defendant's trains *en route* from Harrison to Batavia, arriving at the latter station the same evening after dark; that while she was descending the steps of the coach the conductor stepped up on the last step and grabbed her by the arm, jerking her down so as to cause her to fall and strike her left knee on the edge of the platform.   Her knee was cut, and her leg bruised, and in falling her body was twisted so that it caused her severe pains in her back and resulted in a displacement of her womb.   The testimony tended to prove that inflammation set in, developing into a growth of tumors, known as polypi, which necessitated an operation

within a few months thereafter, and that on this account she had been an invalid from the date of her injury; and there was testimony tending to prove that such injury was permanent. Dr. Fowler, a physician, was introduced by plaintiff, and he testified that he had examined her subsequent to the date of the injury, and had attended her for several months thereafter, and that she was suffering from a prolapsus of the uterus, which might have resulted from her fall; and this witness detailed the nature and extent of her diseased condition, and the consequent growth of the polypi in the womb.

The plaintiff testified that prior to the injury she was strong and in good health, and had been engaged in various kinds of hard work, such as general house work and laboring in the field.

There were a number of witnesses who testified on behalf of the defendant that they were at the station and saw the plaintiff as she was descending from the train, and they testified that they did not see her receive any fall. Defendant also introduced testimony tending to prove facts and circumstances occurring immediately after the plaintiff had left the train indicating that she had received no injury from any alleged fall.

The jury returned a verdict in favor of the plaintiff, and we think that there was sufficient evidence to sustain its finding.

Defendant does not contend that there was not sufficient evidence to sustain the verdict of the jury, nor does it contend that the amount returned by them was excessive. It urges only that there were errors committed by the lower court in the rejection and admission of evidence, and in its rulings upon the instructions.

During the progress of the trial the defendant introduced two physicians who had attended on the plaintiff about two years prior to the time of the alleged injury, and offered to prove by them that she had sustained a displacement of the womb at that time, and had suffered from that trouble long prior to the date of the alleged injury. The plaintiff objected to the admission of this testimony, and her objection was sustained by the court.

It is conceded by the defendant that the information which the testimony of these witnesses would have disclosed was acquired by them while attending the plaintiff as physicians; but it contends that the evidence was admissible because the plaintiff

had waived her right to object to the introduction of any testimony relative to her condition by reason of having herself introduced the testimony of Dr. Fowler, above referred to.

It is provided by section 3098, Kirby's Digest, that "no person authorized to practice physic or surgery, and no trained nurse, shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician or to act for him as a surgeon or trained nurse." This enactment was manifestly made for the benefit of the patient. Its evident purpose was to throw around him a protecting shield, so that he might freely and fully disclose to his physician every fact relative to his ailment with the confident knowledge that the information thus obtained could not be divulged to his injury or disgrace. Being for his benefit, the provision was adopted out of reasons of public policy as a privilege accorded solely to the patient; and, like any other privilege, it is one that the patient may waive. By the terms of this statute, a physician is prohibited from disclosing information obtained while treating his patient; but it has been uniformly held by the courts of those jurisdictions having similar statutes that the provisions thereof must receive that construction which was intended by the Legislature which framed them, and that is, that the patient himself may waive the privilege of the statute in order to obtain the benefit of the physician's evidence. When this privilege is waived as to any particular witness, the opposing side is entitled to the benefit of the waiver as to such witness. But the benefit of such waiver in behalf of the adversary should not extend further than to the witness who has been called by the patient, or as to other physicians who may have been present upon the same occasion to which the witness testifies. By virtue of the statute, the patient alone is given the right to remove the ban of secrecy. The patient may be willing to waive the objection of incompetency as to a particular physician in whom he reposes confidence, and yet be unwilling to waive this objection as to another, who treated him at a different time for the trouble complained of. The statute affords him this privilege, when the testimony of the offered witness does not relate to the same occa-

sion as that from which the patient has removed the seal of secrecy.

In the case of *Hope* v. *Troy & Lansingburgh Rd. Co.,* 40 Hun 438, the rule is laid down that when this privilege is waived by the patient as to any particular witness, the adversary is entitled to the benefit of the waiver as to such witness, but is not entitled thereby to call another physician who had treated the patient at a different time to testify relative to the matter. This case was affirmed later by the Court of Appeals of New York (*Hope* v. *Troy & Lansingburgh Rd. Co.,* 110 N. Y. 643).

We think this rule sound. When a patient divulges what occurred between himself and a certain physician who treated him, that would waive his privilege regarding a disclosure of all that such physician knew and of all that occurred at the time that such physician treated the patient; but this would not authorize the opposing side to call another physician who might have treated the patient at another and different time for the same disease. *Mellor* v. *Mo. Pac. Ry. Co.,* 105 Mo. 455; *Webb.* v. *Met. St. Ry. Co.,* 89 Mo. App. 604; *Dotton* v. *Albion,* 57 Mich. 575; *Westover* v. *Aetna Life Ins. Co.,* 99 N. Y. 56.

Counsel for defendant, upon cross examination of plaintiff, asked her if the physicians whom defendant desired to introduce as witnesses as to her condition prior to the alleged injury had treated her in 1907 for displacement of the womb. This she denied, and it is now urged by defendant that it was entitled to have the benefit of these physicians' testimony in order to contradict the plaintiff. But, if the defendant's position in this respect should be upheld, then the above statute in regard to privileged communications would be easily evaded. In any cause where the opposing party desired to obtain the testimony of an attending physician, it could be secured in like manner, although against the objection of the patient. The plain provisions of the statute forbidding such testimony by a physician cannot thus be abrogated. *Holloway* v. *Kansas City,* 184 Mo. 19, 82 S. W. 89; *Burgess* v. *Sims Drug Co.,* 114 Ia. 275, 54 L. R. A. 364, 89 Am. St. Rep. 359.

We are therefore of the opinion that the plaintiff, by the introduction of the testimony of Dr. Fowler relative to his treatment of her as a physician after the injury, did not waive her

privilege to object to the testimony of other physicians who had treated her prior to that time, although for the same alleged trouble.

It is urged by the defendant that the court committed error in permitting a certain hypothetical question to be propounded to physicians introduced by the plaintiff. This hypothetical question was propounded for the purpose of determining whether or not the displacement of the plaintiff's womb and her subsequent condition was due to a fall. The defendant objected to the question upon the ground that it was not a complete statement of the facts that had been proved by witnesses introduced by the plaintiff, and that it omitted a number of essential facts that had been proved. In propounding a hypothetical question to an expert witness, the data upon which it is based need not cover all the facts which have been proved in the case. The party offering the testimony may select such facts as he conceives to have been proved, and predicate his hypothetical question thereon. In *Ince* v. *State,* 77 Ark. 426, the following is quoted with approval from Prof. Wigmore: "The questioner is entitled to the witness' opinion on any combination of facts that he may choose. It is often convenient, and even necessary, to obtain that opinion upon a state of facts falling short of what he or his opponent expects to prove, because the questioner can not tell how much of the testimony the jury will accept; and, if the proof of the whole should fail, still proof of some essential part might be made, and an opinion based on that part is entitled to be provided for the jury. For reasons of principle, then, and to some extent of policy, the rational conclusion would be that the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis." I Wigmore on Evidence, § 682.

In *Taylor* v. *McClintock,* 87 Ark. 243, Mr. Justice WOOD, delivering the opinion of the court, in speaking of the data upon which a hypothetical question should be based, said: "The party desiring opinion evidence from experts may elicit such opinion upon the whole evidence or any part thereof, and it is not necessary that the facts stated, as established by the evidence, should be uncontroverted. Either party may state the facts which

he claims the evidence shows, and the question will not be defective if there be any evidence tending to prove such facts."

The question to some extent is within the discretion of the trial court, who should control the form of the question, so that there may be no abuse thereof in the statement of the assumed facts upon which it is based. The hypothetical question which is complained of by the defendant in the case at bar, we think, fairly stated the facts which it was claimed by the plaintiff were sufficient upon which to base the opinion of the expert as to the cause of her condition. It is now urged that the question stated certain matters as facts which were contrary to the uncontroverted testimony. This objection was not made to the question in the court below, and we do not think that the contention is well founded. We think that there was some evidence upon which to base all the assumed facts which are set forth in the hypothetical question complained of.

It is urged by the defendant that the court erred in refusing to permit it to introduce in evidence the stenographer's notes of the testimony of the plaintiff upon a former trial of the cause. The stenographer who had taken the notes of the testimony on the former trial testified that he could not remember the testimony that had been given by the plaintiff upon the former trial, and that his memory thereof could not be sufficiently refreshed by the stenographic notes taken by him so that he could testify that he remembered the testimony which plaintiff had given. But he testified that it was his custom, and that, upon the occasion of taking the plaintiff's testimony at the former trial, he had made correct stenographic notes thereof. Defendant asked that the witness be permitted to read said stenographic notes to the jury, and the court refused to permit this to be done.

We do not think that it is necessary to pass upon the question as to whether or not it was competent to permit the witness to read the stenographic notes which he had made of the testimony of the plaintiff at the former trial, which he testified he could not remember, because we do not think that the defendant was prejudiced by the exclusion of such testimony. We do not think that there was any material difference between the testimony as given by the plaintiff upon the second trial and the transcript of stenographic notes of her testimony upon the former trial.

This testimony related to the manner in which the fall was sustained and the injury incurred, and we think that there is no variance between the two in any material particular.

Prior to the trial of the case defendant had taken the deposition of a nonresident witness, and upon the motion of the plaintiff this deposition was suppressed. It appears that the defendant had given notice to the plaintiff that it would take the deposition of this witness, and the witness resided at such a distance that it was necessary to give more than three days' notice under the statute. The plaintiff, immediately upon receiving the notice, served notice upon defendant that it would require the deposition to be taken upon interrogatories. It was insisted by counsel for the plaintiff that, upon such notice being given by him, the defendant was required to file interrogatories with the clerk as provided for in section 3178 of Kirby's Digest, to which the plaintiff would then be entitled to file cross-interrogatories. This was not done by the defendant. It is urged by counsel for defendant that depositions are required to be taken upon interrogatories and cross-interrogatories only in cases where the court has ordered same to be taken upon commission as provided for in section 3177 of Kirby's Digest. But by section 3176, Kirby's Digest, it is provided that "a party to whom more than three days' notice to take a deposition out of the State is given may, by notice to the adverse party or his attorney, served in one day after the service of the first notice, require the deposition to be taken upon interrogatories."

The above provisions are taken from the Civil Code of Practice, in which section 3176 of Kirby's Digest is section 629, and section 3177 of Kirby's Digest follows as section 630 of the Code. We are of the opinion that under both sections it is requisite that depositions be taken upon interrogatories and cross-interrogatories as provided for in section 3178 *et seq.* of Kirby's Digest. In suits at law the right to take depositions in any given case rests upon statutory authority, and in no case can the right be exercised unless the authority therefor exists. Authority to take the deposition of a witness residing without the State is prescribed by the statute. Section 3157, subdivs. 1 and 4, Kirby's Digest. But it is also prescribed that where more than three days' notice to take a deposition out of the State is given to the

adverse party, such party may require the depositions to be taken upon interrogatories; and when this is required by the opposing party, such depositions must be taken upon interrogatories and cross-interrogatories as provided in section 3178 *et seq.* of Kirby's Digest.

It is urged by the defendant that the court erred in giving the following instruction to the jury on behalf of the plaintiff:

"4. I charge you that, although you may believe that before the time of the alleged injury the plaintiff was suffering from a female trouble, or a falling of the womb, or a growth in the womb, which would have eventually brought about her present condition, still if you find from a preponderance of the testimony that the plaintiff fell and was injured by the negligence of the defendant, and that such fall and injury augmented the diseased condition of plaintiff, and caused her to suffer pain, then you will find for the plaintiff, and assess her damages at a sum commensurate with the pain so caused by such negligence."

An instruction similar in effect to the one above was approved in the case of *St. Louis S. W. Ry. Co.* v. *Lewis,* 91 Ark. 343, and we see no reason for disturbing that decision.

The above instruction is also complained of on account of certain verbiage therein; but if there was any error in the language used, the attention of the trial court should have been directed thereto by a specific objection, which was not done. We do not think, however, that the jury could have been misled by the verbiage complained of.

It is urged that the court erred in giving instruction No. 2 as asked by the plaintiff: "2. I charge that if you find from a preponderance of the testimony that the plaintiff was a passenger on the train of defendant, then you are instructed that it became and was the duty of the defendant to exercise for her safety the highest degree of skill, care and diligence which a reasonably prudent person under like circumstances would exercise and which is reasonably consistent with the mode of conveyance and the practical operation of its trains, and for any omission of these duties whereby injury resulted to plaintiff, the defendant would be liable." But at the instance of the defendant the court instructed the jury as follows: "12. You are instructed that the agent of the defendant in assisting passengers to alight from

trains is only required to use that care in so doing as an ordinarily prudent person would exercise under like circumstances;" and also specifically instructed them further that "it is the duty of the conductors and brakemen, where it is deemed necessary, to take hold of the hand or arm of passengers to assist them in alighting from the car, and it is not negligence *per se* for the conductor to take the hand or arm of the passenger and endeavor to lift or guide them so as to enable them to alight in safety. If you find in this case that Conductor Mearnes took hold of the arm or hand of plaintiff, and at the time was in the exercise of ordinary care, and did so for the purpose of assisting plaintiff, and that while he so held plaintiff's hand or arm she made a misstep through no negligence of the conductor, then the fact that the conductor had taken hold of her would not entitle her to recover against the defendant company."

The real issue under the testimony that was involved in this case was whether or not the plaintiff had received the fall in alighting from the train of which she complained, and not the degree of care which was required of the defendant or its employee. There was a sharp conflict in the evidence as to this question of fact, the defendant denying that the plaintiff had received any fall at all. The defendant controverted the cause of the fall by claiming that she did not actually fall. The issue then was whether or not the plaintiff had actually received the fall testified to by her. We do not think, therefore, that there was any prejudice in the giving of the above instruction No. 2 on behalf of the plaintiff, even if it should be considered erroneous. *Arkadelphia Lumber Co.* v. *Posey,* 74 Ark. 377; *Citizens' Electric Co.* v. *Thomas,* 75 Ark. 261.

Counsel for defendant has referred to other rulings of the court upon the giving and refusal to give certain instructions which it claims were erroneous. We have examined each of these, and we do not think that its contention as to any of them is correct. Upon examination of the whole case we fail to find that any prejudicial error was committed by the lower court in the trial of this cause, and the judgment must be accordingly affirmed.