WARREN STAVE COMPANY v. HARDY.

Opinion delivered October 22, 1917.

TRESPASS—TITLE TO LAND—CUTTING TIMBER.—One T. claimed to own certain land, upon which was valuable timber. One J. purchased the right to cut the timber, and having cut the same sold it to the W. Co., who manufactured it into stave bolts. Appellees in fact owned the land and timber thereon, and brought an action against J. and W. Co. for the value of the manufactured product. *Held*, under the facts, that J. was a trespasser, without right to cut the timber, and was liable for his acts, in that he had cut appellee's timber without making a proper investigation as to its ownership. *Held* also, that the W. Co., having purchased from a trespasser, was liable to appellees for the value of the timber after it was manufactured into stave bolts.

Appeal from Bradley Chancery Court; *Zachariah T. Wood*, Chancellor; affirmed.

*B. L. Herring*, for appellant.

1. The proof shows that Jolly believed in good faith that he was the owner of the timber and appellant was an innocent purchaser of the stave bolts. It was, therefore, only liable for the timber value of the bolts. 65 Ark. 448; 451; 123 *Id.* 127; 124 *Id.* 574; 127 Ark. 129.

*J. R. Wilson*, for appellees.

Jolly had no title. He was a trespasser. Appellant was liable for the value of the staves without deduction on account of the increased value by work and labor done on them. 65 Ark. 449; Schouler on Pers. Prop (2 ed.)

37; 38 Cyc. 1130, note 46; 109 Ark. 229; 126 *Id.* 344. The judgment really is too small.

#### STATEMENT BY THE COURT.

The appellees instituted suit in the Bradley Chancery Court against various parties to quiet title to certain tracts of land, one of the tracts being the northwest quarter of the northeast quarter of section 11, township 13 south, range 9 west. As the cause progressed it was discovered that one J. E. Jolly had cut the oak timber standing on the above tract and sold the same to the appellant. Jolly and the appellant were made parties defendant to the suit and by amendments to the complaint it was set up that Jolly had cut and removed the oak timber from the land and sold and delivered the finished product of the same to appellant, and that the same was worth about $800, for which they prayed judgment.

Jolly and the appellant filed separate answers, in which they denied generally the allegations of the complaint as to them, but did not challenge the title of the appellees to the land in controversy, and the appellant set up that if it had bought any timber cut from the land that it was only liable for the value of the timber in the trees, and not for the value of the finished product, and alleged that if it bought any timber from the land in controversy that it did not know it.

The court entered a decree quieting title to the above described tract of land in the appellees, and referred to a master to report as to the timber cut and removed from the land above described. Testimony was heard and the master reported that the Warren Stave Company bought from appellant thirty-two cords of stave bolts, worth $12 per cord.

The court, on final hearing of the issues between the appellant and the appellees, after hearing testimony and the master's report, confirmed the report of the master and entered a decree in favor of the appellees against appellant in the sum of $384, which the appellant here seeks to reverse.

WOOD, J., (after stating the facts).  The appellant contends that the proof shows that Jolly believed in good faith that he was the owner of the timber which he had cut and manufactured into stave bolts from the appellees' land, and that appellant was an innocent purchaser thereof from him; that appellant, at most, would be only liable for the value of the timber per cord in its original form, and not for the market value per cord of the stave bolts at appellant's plant.  We can not sustain this contention, for a preponderance of the evidence justifies a finding that J. E. Jolly was a wilful trespasser in cutting and removing the timber from the land of the appellees. He testified that he cut the oak timber on the land in controversy; that in reference to the timber he dealt with Henly S. Turner.  He did not know whether Turner had a deed or not, but Turner told witness that it was his timber, and he went to working it up.  He told the Warren Stave Company that he bought the timber from Turner.

Turner testified that he sold the oak timber on the tract of land to J. E. Jolly.  He stated that he purchased it, but refused to reveal the name of the one from whom he claimed to have purchased.  He stated that he paid for the timber on the land.

The manager of the appellant testified that his company bought thirty-two cords of stave bolts from J. E. Jolly.  He did not know what land the bolts came from. Jolly told him where he got the bolts.  He understood from his statement that Jolly had title to the land from which the stave bolts were made.  He valued the oak at $2.50 to $3 per cord.  The value of the finished product of the stave bolts in 1912 would bring in the market listed and dried from $25 to $30 for oil staves.  The wine staves, which were a small proportion, would bring $45 or $50 per thousand pieces.

The testimony of Jolly shows clearly that when he bought this timber from Turner he did not know and made no effort to ascertain whether Turner had any title to it. He simply purchased it on Turner's statement that it was his timber.  He did not know whether Turner had a deed

to it or not. While Turner testified that he purchased the timber, he refused to disclose the name of the person from whom he purchased.

One who converts to his own use the timber of another without making any other or further investigation as to the ownership than that discovered by this evidence must be held to be a wilful trespasser. There is no basis in the evidence for an honest belief on the part of Jolly that he was the owner of this timber and had the right to convey the title to the same. Neither he nor Turner had any color of title or shadow of right. Since Turner was unwilling to disclose the source of his title, we must assume that he did so for the reason that he knew that he had no title. If Jolly had exercised any diligence to find out who was the owner of the lands from which he cut and removed the timber he could easily have ascertained that Turner, from whom he claimed to have purchased, had no title. It was at least incumbent upon him to put forth some honest endeavor in that direction before he went upon and cut valuable timber from the lands belonging to the appellees. Under the circumstances Jolly would not be heard to say that he went upon the lands in good faith and was innocent of any wrong doing.

Since Jolly was a wilful trespasser, he acquired no right or interest in the timber cut and removed by him from the lands of the appellees, and, although the appellant may have innocently purchased the timber from Jolly, it acquired no greater right or title than Jolly had. Jolly having no right or title, conveyed none to the appellant. *Griffith* v. *Ayer-Lord Tie Co.,* 109 Ark. 223. See, also, *Foreman* v. *Holloway & Son,* 122 Ark. 341; 2 Cooley on Torts, p. 866.

Jolly being a wilful trespasser in cutting and removing the timber from appellees' lands, if the suit had been against him he would not have been entitled to any deduction from the market value of the stave bolts on account of labor and expenses in reducing the timber from its original to its present form. He would have had to pay for the value of the timber in the form in which it was

found in his hands; and, although appellant innocently assisted him in converting the timber to his own use, it stands in his shoes so far as liability to the appellees is concerned. *McKinnis* v. *Little Rock, Miss. River & Texas Ry. Co.,* 44 Ark. 210; *Central Coal & Coke Co.* v. *John Henry Shoe Co.,* 69 Ark. 302; *U. S.* v. *Flint Lumber Co.,* 87 Ark. 80; *Nashville Lumber Co.* v. *Barefield,* 93 Ark. 353.

Without discussing the evidence in detail, it suffices to say that a preponderance thereof sustains the finding of the chancellor to the effect that stave bolts of the character of those in controversy, at the time of the purchase, were worth $12 per cord, and even more, on the market at Warren where appellant's plant was located, after deducting the cost of transporting the same to such market.

The decree is therefore correct, and it is, in all things, affirmed.