BREWER, EXECUTOR, *v.* FLETCHER.

4-7905                    194 S. W. 2d 668

Opinion delivered May 20, 1946.

*Ben B. Williamson,* for appellant.

*W. F. Reeves,* for appellee.

ED. F. McFADDIN, Justice. S. L. Fletcher sued Oris R. Case in the chancery court, seeking damages for trespass and unlawful cutting of timber. From a decree allowing a recovery, there is this appeal.

Mrs. W. G. Wightman of Calais, Maine, was the owner of 160 acres of land in Stone county, Arkansas. By timber deed dated March, 1941, she sold to Fletcher "all the merchantable pine and oak timber" on said land. Mrs. Wightman suffered the 1940 taxes to remain unpaid; and on November 10, 1941, the lands were sold at the collector's delinquent tax sale (under § 13849, *et seq.,* Pope's Digest), and Bryan Hopper received a certificate of purchase (under § 13856, Pope's Digest).

In 1941, Fletcher cut and removed the pine timber, intending to later cut and remove the oak timber. Some time in the early part of 1942, Bryan Hopper (claiming under his said tax certificate) sold all the merchantable timber on the 160 acres to Oris Case, who immediately cut and removed the oak timber.

When Fletcher returned to the land in January, 1943, and found that the oak timber had been removed, he effected a redemption from the tax sale under which Bryan Hopper claimed; and then Fletcher filed this suit against Case, claiming, *inter alia,* that Case was a willful trespasser and liable for the timber in its manufactured state. Case denied that Fletcher was the owner of the

timber; and also denied that Case was a willful trespasser; and also disputed the amount and value of the timber. Both Fletcher and Case died prior to the decree of December 3, 1945, and the cause was revived by Fletcher's widow and heirs against Brewer, executor of the estate of Case. For convenience, we refer to the original parties as plaintiff and defendant, and their respective representatives as appellees and appellant. A trial resulted in a decree for $800 for appellees; and on this appeal appellant presents the assignments herein listed and discussed.

I. *Appellant Claims the Chancery Court Should Have Quashed the Deposition of Gerald E. Hill.* On September 2, 1944, appellees' attorney served personal written notice on appellant that the deposition of the witness for the appellees would be taken at a duly designated place in Calais, Maine, on September 11, 1944; and the deposition of Gerald E. Hill was taken under said notice. When the deposition was filed in court, the appellant moved to quash the deposition; and the denial of this motion is assigned as error. Three points are argued:

(1) The appellant contends that the deposition was taken outside of the state and without previous court order, and therefore should be quashed. We hold, that in civil cases, a court order is not a prerequisite to a valid taking of depositions outside of the state. Section 5227, Pope's Digest, says: "Depositions shall be taken upon reasonable notice to the adverse party, or upon interrogatories." Section 5228 to 5233, inclusive, Pope's Digest, relate to the sufficiency of such notice. Section 5238, Pope's Digest, does not limit these previous sections, but provides an alternative way of taking depositions. See *Mo. & N. A. Rd. Co. v. Daniels,* 98 Ark. 352, 136 S. W. 651.

To support his argument, to the effect that a deposition to be taken out of the state must be either upon court order or by consent, appellant cites § 5223, Pope's Digest, the last words of which section read: ". . . by consent of the parties, or by order of the court." A

reading of the entire section clearly demonstrates that the section relates to the *person* before whom a deposition may be taken, and not to the intention to secure the evidence. The section says that depositions out of the state may be taken before certain named officials (such as justice of the peace, notary public, etc.), ". . . or any person empowered by a commission, directed to him by consent of the parties or order of the court." The words "order of the court" relate to "any person" before whom the deposition is to be taken, and not to the power of the parties to take the depositions. In a civil case, such as here, depositions may be taken on notice to the adverse party and without a previous court order.

(2) The appellant next contends that the deposition of Gerald E. Hill should be quashed because it was not taken on written interrogatories and cross-interrogatories. On this point we hold that the depositions need not be taken on written interrogatories, unless the adverse party so requires. When the notice was served on the appellant under § 5227, Pope's Digest, then the appellant had the right (under § 5237, Pope's Digest) to require that the deposition be taken on written interrogatories. The appellant failed to avail himself of § 5237, Pope's Digest, so he is in no position now to object to the failure to take the deposition on written interrogatories.

(3) Finally, the appellant says that the deposition of Gerald E. Hill was taken without reasonable notice, because the time allowed was insufficient. It will be recalled that appellant received personal written notice in Stone county, Arkansas, on September 2, 1944, that the deposition would be taken in Calais, Maine, on September 11, 1944. Under § 5231, Pope's Digest, appellant was allowed two days for preparation; and under § 5232, Pope's Digest, appellant was allowed "the time ordinarily required for such mode of travel" from Stone county, Arkansas, to Calais, Maine. Seven days is certainly sufficient to travel from Stone county, Arkansas, to Calais, Maine, by bus or train, or other usual mode of travel. So, the time between the serving of the notice

and the taking of the deposition was ample in this case. See *Pine Bluff & Western Railroad Co.* v. *McCaskill*, 88 Ark. 177, 114 S. W. 208.

II. *Appellant Claims That the Plaintiff's Timber Deed Was Not of Record When the Defendant Cut the Timber, and Therefore Appellees Cannot Recover.* Fletcher received his timber deed from Mrs. Wightman in March, 1941, but did not record the deed until January, 1943. In the interim Bryan Hopper had received his tax certificate, and sold the timber to Case, who had cut and removed the oak timber here involved. Appellant cites § 1847, Pope's Digest, on the necessity of recording an instrument, which is: "No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; or against any creditor of the person executing such deed, bond, or instrument, obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and ex-officio recorder of the county where such real estate may be situated." Appellant argues that under this section, the defendant, Case, was a "subsequent purchaser . . . for a valuable consideration, without actual notice . . ."; and, because of this section, appellees cannot recover, since the plaintiff's timber deed was not of record.

There are several answers to appellant's contention. One answer is that neither Bryan Hopper nor Oris R. Case was a subsequent purchaser from the landowner, and the said statute refers to subsequent purchasers from the common grantor. See *Halbrook* v. *Lewis*, 204 Ark. 579, 163 S. W. 2d 171. Another answer to the appellant's contention is that neither Bryan Hopper nor Oris R. Case was a purchaser, but each was only a mere

holder of a tax certificate. Neither Hopper nor Case had any right to possession of the land until two years had expired from the date of the tax sale. The statute (§ 1847) is for the benefit of subsequent purchasers entitled to possession, and not to mere trespassers. In section IV of this opinion we will demonstrate that Hopper and Case were willful trespassers. Thus, the constructive notice statute (§ 1847, Pope's Digest) is no defense to appellant.

III. *Appellant Claims That Fletcher's Right to Cut the Timber Had Expired Before Case Entered the Land.* The appellees introduced evidence to show that Fletcher held under a timber deed dated March 21, 1941, which deed gave Fletcher "a period of two years from date hereof . . . within which to cut and remove said timber." Appellant insisted that the timber deed under which Fletcher held allowed only one year from March 17, 1941, within which to cut and remove the timber; and that the appellees could not recover because Fletcher's rights had expired before Case cut and removed the oak timber. There were two timber deeds introduced in evidence; one was dated March 17, 1941, and allowed Fletcher one year to cut and remove the timber. The other timber deed was dated March 21, 1941, and allowed Fletcher two years to cut and remove the timber. Appellees claimed that Fletcher had refused to accept the one-year timber deed, and thereupon Mrs. Wightman had executed the two-year timber deed. The appellant claimed that the two-year timber deed was the work of Fletcher, in changing the term from one year to two years without the knowledge or consent of the landowner.

Most of the evidence in the case was directed to the issue of whether the Fletcher timber deed was for one year or two years. Gerald E. Hill of Calais, Maine, was the notary public who witnessed Mrs. Wightman's signature and took her acknowledgment to the timber deed dated March 21, 1941; and Hill testified that he changed the term from one year to two years at Mrs. Wightman's request; and that she signed and acknowledged the two-

year timber deed. When we consider—as we do—the deposition of Gerald E. Hill, we reach the conclusion—as did the chancery court—that Fletcher had a two-year timber deed. At all events, we cannot say that the chancery court's finding on this point is against the preponderance of the evidence; and we affirm the holding of the chancery court to the effect that Fletcher's right to cut and remove the timber continued until March 20, 1943, and that Case cut and removed the timber before that date.

IV. *The Amount of the Recovery.* The chancery court allowed appellees $800 as damages. This judgment is not excessive, if Case was a willful trespasser. The rule is well established in this state that, if the trespass is unintentional, then the measure of damages is the value of the timber in the trees; but if the trespass is willful, then the measure of damages is the value of the timber in its manufactured state. *Peek* v. *Henderson,* 208 Ark. 238, 185 S. W. 2d 704; *Warren Stave Co.* v. *Hardy,* 130 Ark. 547, 198 S. W. 99, L. R. A. 1918B, 183.

We hold that Oris R. Case was a willful trespasser in cutting and removing the timber. Bryan Hopper obtained his certificate of purchase at the delinquent tax sale on November 10, 1941. This was not a tax sale of the timber rights under §§ 13858 and 13861, Pope's Digest, but was a tax sale of the land under § 13849, Pope's Digest. Bryan Hopper received a certificate of purchase under §§ 13856 and 13852, Pope's Digest; and the landowner had two years from the sale in which to redeem under § 13860, Pope's Digest. Fletcher made the redemption for the landowner under § 13864, Pope's Digest, within the two years allowed for redemption.

Neither Hopper nor Case had any right to possession of the land until two years had expired from the date of the tax sale; and before the two years had expired, there was a redemption. So, neither had any right at any time to possession of the land or the timber thereon. In 61 C. J. 1295, in discussing the right to possession of lands sold for taxes, pending the period of

redemption, the general rule is stated: "In the absence of a statute authorizing a purchaser of land sold for taxes to enter into possession prior to the expiration of the period of redemption, until he obtains his tax deed, or at any rate until the expiration of the period of redemption, . . . the owner of the land, and not the tax purchaser, is ordinarily entitled to the possession and enjoyment of the estate, and, if the latter enters without the consent of the former, it is a trespass. Thus, in the absence of statutory authority, a purchaser has no right of entry on his mere certificate of tax sale before deed." See, also, 51 Am. Juris. 931.

We have no statute in Arkansas which empowers the holder of a certificate of purchase of lands sold at a collector's tax sale (under § 13849, *et seq.*, Pope's Digest) to take possession of the land prior to the expiration of the period of redemption; and therefore no such right of possession exists. In fact, the language of paragraphs 2 and 3 of § 13860, Pope's Digest (being the amendatory language added by Act 302 of 1923), if applicable, shows a legislative intent to prevent timber from being removed from lands for a period of ten years from the date of the tax sale. The holder of a certificate of purchase, in a proper case, might prevent the removal of the timber by another during the period of redemption, as was done in *Little Red River Levee District* v. *Thomas*, 154 Ark. 328, 242 S. W. 552. But the holder of the tax certificate certainly could not legally cut and remove the timber before the two years allowed for redemption. Even thereafter he proceeds at his peril in the cases covered by § 13860, Pope's Digest.

Bryan Hopper (called as a witness by the appellant) testified that he purchased the land at the tax sale in November, 1941, and sold Case the timber "the next spring." Hopper testified as follows: "Q. Did you tell Mr. Case at the time that you had bought it for taxes? A. Yes, sir. Q. He knew the source of your title? A. Yes, they knew I had bought it in. Q. Did you tell him when you had bought it? A. Well, I don't remember telling him just when, I had the papers there. Q. You

had your papers? A. Yes, sir. Q. You showed him your papers? A. Yes, sir. Q. That was the Sheriff's certificate of sale? A. I guess that is what you would call it. I don't know.''

The facts in the case at bar—insofar as regards willful trespassing—are similar to the facts in the case of *Warren Stave Co.* v. *Hardy,* 130 Ark. 547, 198 S. W. 99, L. R. A. 1918B, 183. In that case we said:

''The testimony of Jolly shows clearly that when he bought this timber from Turner he did not know and made no effort to ascertain whether Turner had any title to it. He simply purchased it on Turner's statement that it was his timber. He did not know whether Turner had a deed to it or not. While Turner testified that he purchased the timber, he refused to disclose the name of the person from whom he purchased.

''One who converts to his own use the timber of another without making any other or further investigation as to the ownership than that discovered by this evidence must be held to be a willful trespasser. . . .

''Jolly being a willful trespasser in cutting and removing the timber from appellees' lands, if the suit had been against him he would not have been entitled to any deduction from the market value of the stave bolts on account of labor and expenses in reducing the timber from its original to its present form. He would have had to pay for the value of the timber in the form in which it was found in his hands; and, although appellant innocently assisted him in converting the timber to his own use, it stands in his shoes so far as liability to the appellees is concerned. *McKinnis* v. *Little Rock, Miss. River & Texas Ry. Co.,* 44 Ark. 210; *Central Coal & Coke Co.* v. *John Henry Shoe Co.,* 69 Ark. 302, 63 S. W. 49; *U. S.* v. *Flint Lumber Co.,* 87 Ark. 80, 112 S. W. 217; *Nashville Lumber Co.* v. *Barefield,* 93 Ark. 353, 124 S. W. 758, 20 Ann. Cas. 968.''

The decree of the chancery court is in all things affirmed.

The Chief Justice did not participate in the consideration or determination of this case.