MOLITER *v.* PEOPLE'S BUILDING & LOAN ASSOCIATION.

Opinion delivered February 23, 1925.

1. BUILDING AND LOAN ASSOCIATION—BY-LAWS AS PART OF CONTRACT. —The by-laws of a building and loan association at the time of execution of a contract for a loan are part of its contract, and must be read in connection with it.

2. BUILDING AND LOAN ASSOCIATION—BOND OF BORROWER.—Though a by-law of a building and loan association provided only for the execution of a bond by the borrower for payment of labor and materials on a contemplated improvement, this did not impliedly prohibit an additional contract that the borrower should expend the entire amount borrowed in making the improvement.

3. ESTOPPEL—SILENCE.—A building and loan association will not be estopped to set up a breach of covenant to expend the entire sum borrowed in making certain improvements by having said nothing to the borrower's sureties about the alleged failure to make such expenditures for more than a year, as silence will operate as an estoppel only when there is a duty to speak.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

STATEMENT OF FACTS.

People's Building & Loan Association brought this suit in the circuit court against E. C. Hornor and J. S. Hornor, as principals, and E. P. Molitor and Jas. C. Rembert as sureties, on a construction bond, to recover the sum of $10,000, alleged to be due for money advanced by said association to the principals on said bond.

E. C. Hornor and J. S. Hornor made application to the People's Building & Loan Association of Helena for an advance on their 400 shares of stock in the sum of

$10,000. They proposed to secure the payment of the loan by a lien upon five lots, specifically described, situated in that part of the city known as West Helena. They agreed further to keep insured the buildings which were to be erected on said property for such amount as the board of directors of said building and loan association might require. People's Building & Loan Association accepted the loan under the terms prescribed in the application. E. C. Hornor and J. S. Hornor, as principals, and E. P. Molitor and Jas. C. Rembert, as sureties, executed a bond to the People's Building & Loan Association in Helena, Ark., in the sum of $10,000. The bond is conditioned as follows: "Whereas the said E. C. Hornor and J. S. Hornor have borrowed of the said People's Building & Loan Association the sum of ten thousand and no/100 dollars for the purpose of erecting five houses on the following described lots or parcels of land situated in Phillips County, Arkansas, towit: (Here is inserted a description of the lands.)

"And whereas the said E. C. Hornor and John S. Hornor desire to secure the payment of said money by executing a mortgage on the property as improved as aforesaid.

"Now therefore, if the said E. C. Hornor and J. S. Hornor shall well and truly expend the said sum of $10,000 in making said improvements, as aforesaid, and shall thereby cause said property to be increased in value to the extent of $10,000, and shall pay or cause to be paid all amounts that may be due for labor or materials so used in erection or improvement of said buildings, and shall cause the same to be freed of all liens for such labor or materials, and shall cause to be issued and delivered to said association policies of insurance against loss by fire and tornado, as required in said deed of trust, then and in that event this obligation shall be null and void, otherwise to be and remain in full force and effect."

We incorporate into our statement of facts a portion of § 12 and the whole of § 53 of the by-laws of said building and loan association.

"Section 12.   Whenever a loan is made for building purposes, all contracts shall be first submitted to the board of directors for their approval, and, as the building progresses, the building committee shall see that the work is properly done, and audit the bills in favor of the contractor.   Before, however, paying any part of such loan, the contractor, contractors, or borrower must be required to give a bond to indemnify the association against liens of mechanics and materialmen.   The sufficiency of such bond shall be determined by the board. Whenever a bill for any such work is presented to the secretary with an order to pay same written on the bill, signed by the borrower and the chairman of the building committee, the secretary shall issue his check for the amount.   The check must be countersigned by the president before being paid by the treasurer."

"Section 53.   The building committee shall examine all the plans, specifications and contracts of the members, and shall exercise a general supervision over all buildings which are in course of erection by the association.   All matters relating to plans, estimates and materials, repairs, etc., shall, before being passed upon by the board, unless otherwise ordered, be referred to them for examination.   The chairman of this committee shall audit all bills pertaining to buildings being erected by the members before such bills can be paid by the secretary's check."

The $10,000 was advanced to E. C. and J. S. Hornor in April, 1920.   They used the sum so advanced in their business, and failed to erect any buildings on said lots for the period of more than a year after the advancement of the $10,000 was made.   E. C. and J. S. Hornor then began the erection of houses on said lots, but very inferior materials were used.

The present suit was instituted on June 21, 1921. On motion of the defendants, the case was transferred to the chancery court and tried there.   The chancellor found the issues in favor of the plaintiff, and a decree was entered of record in its favor.   The case is here on appeal.

*P. R. Andrews* and *J. G. Burke,* for appellant.

The by-laws of the appellee are to be considered a part of the bond executed by the appellant as sureties. 105 Ark. 140; 113 Ark. 400; 103 U.S.222; Thompson on Corp. (2nd Ed.) vol. 1, § 979, p. 1191; 4 R. C. L. § 4, p. 344; 95 N. W. 230; 6 R. C. L. § 240, p. 85. The sureties are released from the bond for the reason that the appellee failed to comply with its by-laws, sections 12 and 13 in particular, 159 Ark. 405; 74 Ark. 600; 4 Pa. St. 348; 112 Ark. 207; 113 Ark. 429; 123 Ark 486; 93 Ark. 472. Appellee has been guilty of such acts and conduct as would create an equitable estoppel to prosecute and maintain this suit. 33 Ark. 465; 125 Ark. 146; 155 Ark. 172; 89 Ark. 349; 83 Ark. 548.

*W. G. Dinning,* for appellee.

Estoppel not having been interposed as a defense in the lower court, appellant cannot now insist upon it. 12 Ark. 769; 152 Ark. 1. In any event, mere silence will not work an estoppel. 10 R. C. L. 693-694. To have the benefit of an estoppel, one must show diligence and good faith, 10 R. C. L. 696-697.

HART, J., (after stating the facts). The by-laws of the People's Building & Loan Association incorporated in our statement of facts were in existence at the time the contract in this case was executed, and became a part of the contract. Therefore they must be read in the light of each other in construing the contract.

It is the contention of counsel for the defendants that, when the by-laws are read into the contract, the two in effect provide that the sole object of the execution of the bond was to protect the association against the liens of laborers and materialmen in the construction of the buildings to be erected upon the lots in question. In making this contention they referred to that part of § 12 which reads as follows: "Before, however, paying any part of such loan, the contractors or borrower must be required to give a bond to indemnify the association against liens of mechanics and materialmen." "Such loan" means the loan made to the borrower for the pur-

pose of erecting buildings on the lots described in the application. When the clause of the by-laws just quoted is read in connection with the conditions of the bond, it will be noted that the terms of the bond are broader than warranted by the by-laws. In other words, the by-laws only provide for the execution of a bond to indemnify the association against the liens of mechanics and materialmen. The terms of the bond go further and provide that the borrower shall expend the whole of the $10,000 in making the specified improvements on the lots and thereby cause the property to be increased in value to the extent of $10,000. It then provides that the signers of the bond shall pay or cause to be paid all amounts due for labor or materials used in the erection of the buildings.

The parties were capable of contracting between themselves, and there is nothing in the by-laws to prevent said building and loan association from requiring a bond that the borrower shall expend the amount borrowed in making the proposed improvements on the property, in addition to paying all amounts due for labor and materials used in the erection of the buildings. If the sureties only wished to become liable for the amount of laborers' and materialmen's liens on the proposed buildings, they should have signed a bond which restricted them to liability to that extent. Having signed a bond conditioned that the borrower should expend the amount borrowed in making certain improvements, they are liable for any default by their principal in failing to carry out the conditions of the bond.

It cannot be said that, because the by-laws only provided for the execution of a bond for the payment of labor performed and materials used in the erection of the buildings, this is an implied prohibition against executing a bond, not only for that purpose, but containing the additional covenant that the borrower should expend all of the $10,000 in making the improvements. It is true that the building and loan association was not required to take a bond having this additional cove-

nant, but it was not *ultra vires* for it to do so. Therefore, having written into the bond a covenant that the principals should expend the sum of $10,000 in making the improvements, the sureties are liable for default therein.

It is next contended that the plaintiff is estopped from making this contention because it allowed a period of more than one year to elapse without saying anything to the sureties about the alleged default. This did not make any difference. In order that mere silence may operate as an estoppel in equity, it is necessary that one should maintain silence when in conscience he ought to speak. In short, it is only when the party is under a duty to speak that mere silence will operate as an estoppel. *Pettit-Galloway Co.* v. *Womack,* 167 Ark. 356.

To illustrate: Suppose the building and loan association had approved a contract for the erection of the buildings as contemplated in the application for the loan, and its building committee had approved the plans and specifications, it could not then have urged that the whole of the amount borrowed had not been expended in making the improvements.

Again, if it had exercised a general supervision in the course of the erection of the proposed buildings, it could not wait until they had been completed and then complain that inferior or faulty materials had been used in the construction of the buildings.

It follows that the decree must be affirmed.