BAKER-MATTHEWS LUMBER COMPANY *v.* BANK OF LEPANTO.

## Opinion delivered May 3, 1926.

1. LOGS AND LOGGING—MORTGAGE OF STANDING TIMBER.—A mortgage of growing trees is a conveyance of an interest in the land itself.

2. MORTGAGES—TIMBER RECENTLY CUT.—A mortgage of "all of the timber now standing and growing or having recently been cut down on all of the following described lands," etc., *held* not fraudulent, regardless of the intent of the parties, where the timber recently cut was not a material part of the security.

3. MORTGAGES—PURCHASE OF MORTGAGED PROPERTY.—The purchaser of mortgaged property takes it subject to the mortgage where the mortgage is recorded.

4. ESTOPPEL—BASIS.—The principle of equitable estoppel is that when a man has deliberately done an act or said a thing, and another person who had a right to do so has relied on that act or those words and shaped his conduct accordingly, and would be injured if the former could repudiate the act or recall the words, it shall not be done.

5. ESTOPPEL—SILENCE.—To constitute silence an estoppel, there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining silence must be in a situation to know that some one is relying thereon to his detriment.

6. MORTGAGES—WILLFUL TRESPASS IN CUTTING TIMBER.—The mere fact that a mortgagor in possession cuts timber which he has mortgaged to another does not constitute him a willful trespasser in so doing; his liability as willful trespasser depending upon whether his act is so doing was in good or bad faith and whether or not it results in an injury to the mortgagee.

Appeal from Poinsett Chancery Court; *J. M. Futrell,* Chancellor; affirmed.

This was a bill to foreclose a mortgage on timber executed by W. J. Rowe & Sons, a partnership, to the Bank of Lepanto, on the 10th day of September, 1919, to secure an indebtedness of $10,000. A renewal mortgage on the same property to secure the same indebtedness was executed on July 20, 1922, and duly filed for record.

A receiver was asked on the ground that the mortgagors had cut and sold timber to an amount which impaired the mortgage security, and the Baker-Matthews Lumber Company, a corporation, was made a defendant on the ground that it had purchased the timber from the mortgagors and converted it to its own use. It was also alleged that the mortgagors were insolvent.

The Baker-Matthews Lumber Company defended the suit on the ground that the mortgage was invalid as to third parties, and on the further ground that the mortgagee gave permission to the mortgagors to cut the timber; or at least that it was estopped by its conduct from claiming the proceeds from the sale of the timber. The mortgage sought to be foreclosed was executed on the 20th day of July, 1922, and was duly filed for record.

The description of the property is "all the timber now standing and growing, or having been recently cut down," on certain lands "which are described according to the United States Government surveys." The mortgage recites that it is executed for the purpose of renewing an instrument between the same parties executed on the 10th day of September, 1919, and for the purpose of renewing the indebtedness created at that time. The indebtedness recited is the sum of $10,000, evidenced by a promissory note for that amount payable to the Bank of Lepanto on demand, with interest at 10 per cent. per annum until paid.

The record shows that the original mortgage was executed on the 10th day of September, 1919, and that it was duly filed for record. The description of the prop-

erty in it is also "all of the timber now standing and growing, or having been recently cut down," on certain lands, which are described according to the United States Government surveys. The indebtedness is recited to be $10,000, evidenced by two promissory notes for the sum of $5,000 each, bearing interest at the rate of 10 per cent. per annum from date until paid. One of the notes is due four months after date and the other eight months after date. The evidence shows that none of the mortgage indebtedness has been paid.

Other facts relating to the issues raised by the appeal will be stated and discussed under appropriate headings in the opinion.

The chancellor found the issues in favor of the plaintiff, and made a particular finding that W. J. Rowe & Sons were insolvent, and that it was necessary for the protection of the mortgage indebtedness that the plaintiff should recover the stumpage value of the timber cut and removed, which was included in the mortgage.

It was decreed that the plaintiff should recover $9,468.16, with 6 per cent. interest from December 15, 1924, from the Baker-Matthews Lumber Company. To reverse that decree, the Baker-Matthews Lumber Company has duly prosecuted an appeal to this court.

*H. R. Boyd* and *Charles D. Frierson,* for appellant.

*John W. Scobey* and *Hawthorne, Hawthorne & Wheatley,* for appellee.

HART, J., (after stating the facts). It is first contended by counsel for appellant that the decree should be reversed on the ground that the mortgage in question is constructively fraudulent and void, as far as the rights of appellant are concerned. They invoke the settled doctrine of this court that a mortgage on a stock of merchandise, which on its face expressly or by necessary implication authorizes the mortgagor to dispose of the property as his own, is, as a matter of law, without reference to the actual intent of the parties, fraudulent and void as to the rights of third parties. *Lund v.*

*Fletcher,* 39 Ark. 325; *Gauss Sons* v. *Doyle & Co.,*
46 Ark. 122; and *Stix v. Chaytor,* 55 Ark. 116.

They urge that there is no distinction, in the appli-
cation of this principle, between a mortgage that con-
veys a stock of merchandise in a store and one that con-
veys lumber and other material, which may be by the
mortgagor, in the due course of business, manufactured
into furniture for the market and disposed of for the
mortgagor's use and benefit. *Ables* v. *Keith, Simmons
& Co.* (Ala.), 44 Sou. 693, and cases cited.

The reason for the rule in the case of chattels is
that the conduct of the parties dealing with the mort-
gaged property in such cases shows that the mortgage
was executed with a fraudulent intent. Where the mort-
gage contemplates that the mortgagor shall continue in
possession, making sales from day to day as owner, and
dealing with the goods and proceeds as his own, with
the mortgagee's knowledge and consent, it is difficult to
resist the conclusion that this course of conduct on the
part of the mortgagor was intended by the parties when
the mortgage was made. Hence in such cases it is held
as a matter of law that a chattel mortgage is void as
against creditors and other persons acquiring interests
adverse to the rights of the mortgagee.

This rule has no application, however, under the facts
in the case at bar. The mortgage was given on standing
timber which constituted a part of the realty. It is well
settled in this State that growing trees constitute a part
of the realty, and their conveyance by the owner to a
purchaser is a conveyance of an interest in the land itself.
*Chicago Land & Timber Co.* v. *Dorris,* 139 Ark. 333;
*Henry Quellmalz Lbr. & Mfg. Co.* v. *Roche,* 145 Ark. 38;
*Graysonia-Nashville Lumber Co.* v. *Saline Development
Co.,* 118 Ark. 192, and cases cited.

It is true that the description of the property in the
mortgage is, "all of the timber now standing and growing
or having recently been cut down on all the following
described lands." But the record shows that the mort-

gage on the standing timber constituted the greater part of it, and that the timber recently cut down was a mere incident, and that the mortgage on it was not the real security.   It will be remembered that the mortgage executed in 1922 was but a renewal of the original mortgage executed in September, 1919.   Under these circumstances it cannot be said that the mortgage is fraudulent without regard to the actual intent of the parties to defraud.

It is conceded that the general rule is that a purchaser of mortgaged property takes it subject to the mortgage, where the mortgage is recorded as in the present case.   The undisputed facts show that no express agreement was entered into between the mortgagors and the mortgagee to allow the former to sell the mortgaged property and subject the proceeds to its own use.   The mortgagors, however, were placed in possession of the timber embraced in the mortgage, and it is claimed that they had the implied authority to cut and carry away the mortgaged timber.

The president of the Bank of Lepanto testified in positive terms that he did not give the mortgagors nor· any one else authority to cut the timber embraced in the mortgage.   He admitted that he agreed with the mortgagors and a representative of the Baker-Matthews Lumber Company that the stumpage might be manufactured into lumber, if an arrangement could be made whereby the bank was to be paid for the stumpage.   On June 30, 1921, the president of the bank did write to appellant a letter, in which it admitted that some of the timber securing the indebtedness to it had been cut into lumber. There is nothing whatever in the letter or in the testimony to indicate that the bank knew that any considerable portion of the timber had been cut.   On the other hand, in the same letter, the bank expressed the hope that Rowe would have by that time enough equity in his contract with appellant that it could let the bank have some payment on its indebtedness and still have a margin for appellant.

The record shows that the mortgagors had 230 or 240 acres of timber lands in addition to those embraced in the mortgage, and that they had made a deal with Crigger Bros. to cut and remove this timber. These lands were heavily timbered. The bank also knew that the mortgagors had made a contract with appellant to make them advances for cutting and removing the timber by Crigger Bros. It seems that the reference to the profits spoken of in this letter refer to the contract with Crigger Bros. to cut and remove the timber from the 240 acres of land. The testimony does not show that the bank knew that any considerable quantity of the mortgaged timber had been cut.

Testimony was introduced by appellant tending to show that the bank might have obtained such knowledge if its agents had gone on the lands and examined the mortgaged timber. This may be true; but no duty in that respect devolved upon the plaintiff. Appellant had actual and constructive knowledge of the mortgage to the bank, and knew that it could only purchase the timber subject to the rights of the mortgagee. The mere fact that the mortgagee should fail to find out whether or not the timber had been cut could in no sense divest it of any of its rights under the mortgage. The fact that the checks given to timber cutters passed through the bank was not sufficient to show that the bank had given the mortgagors permission to cut the timber. As we have already seen, the bank thought that the timber was being cut under the contract with Crigger Bros., and had a right to assume that these checks were given for timber cut on the 240 acres of land. The fact that the bank knew in June, 1921, that some of the timber had been cut from the land did not amount to an agreement or assent that the mortgagors might cut and dispose of the balance of the timber. We do not deem it necessary to set out all the evidence on this branch of the case. The witnesses were examined and cross-examined at great length, and to set out their testimony would unduly extend the opinion and serve no useful purpose. We have carefully con-

sidered all the evidence on this phase of the case and have reached the conclusion that there was no implied consent on the part of the bank for the mortgagors to cut the timber embraced in the mortgage and sell the same to appellant.

This is an action in the nature of waste against a mortgagor in possession for cutting timber and selling it, and also against the purchaser of the timber to recover the proceeds of sale. In this view of the matter, it is insisted that the plaintiff as mortgagee is estopped .from claiming the proceeds of the sale of the mortgaged timber. The whole principle of equitable estoppel is that, when a man has deliberately done an act or said a thing, and another person who had a right to do so has relied on that act or words, and shaped his conduct accordingly, and will be injured if the former can repudiate the act or. recall the words, it' shall not be done. *Trapnall* v. *Burton,* 24 Ark. 371.

While mere silence may operate as an estoppel in equity, to constitute silence an estoppel there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining silence must be in a situation to know that some one is relying thereon to his detriment. *Brownfield* v. *Bookout,* 147 Ark. 555; *Indiana Lumberman's Mut. Ins. Co.* v. *Meyers Stave & Mfg. Co.,* 164 Ark. 359; *Moliter* v. *People's Building & Loan Assn.,* 168 Ark. 53; and *Pettit-Galloway Co.* v. *Womack,* 167 Ark. 356.

Tested by this principle, it cannot be said in any sense that the bank is precluded by equitable estoppel from asserting its rights as against the appellant as the purchaser of the timber embraced in the mortgage. The bank did nothing whatever to mislead appellant, and did not in any sense induce it to purchase the mortgaged timber upon a reliance that it would not assert its rights under the mortgage.

In the letter of June 27, 1921, written by appellant to the bank, it expressly refers to a letter which it had

received from the bank relative to its mortgage on the timber in question. After discussing certain handicaps which Rowe had had in his contract with Crigger Bros., appellant goes on to state that, as soon as the Crigger Bros'. timber is cut up and out of the way, it believes that arrangements can be made where it would be willing to make the bank an advance on the timber embraced in its mortgage as fast as Rowe cuts it. The letter goes on to say that this would reduce the loan of the bank as fast as the timber was cut, and, in addition, that Rowe would have a substantial equity in the timber which he had on hand. It is apparent from the letters and from the oral testimony that appellant fully understood that the bank was relying upon its mortgage on the timber. The evidence shows that the mortgagors were insolvent. It does not disclose in definite terms that the mortgagors were insolvent during all of the time of the transaction in question, but the circumstances point that way. Appellant's letters show that it was not willing to make advances to the bank upon its mortgage until the mortgagors were ready to commence cutting the mortgaged timber. It is fairly inferable that appellant knew that the bank was relying upon the timber embraced in its mortgage for the payment of its mortgage indebtedness and that the bank was only agreeing that the mortgagors might make a contract with appellant to advance them money with which to cut the timber upon the assurance that the proceeds of sale should be applied to the payment of the mortgage indebtedness. The bank did not, by word or conduct, lead appellant to believe that it had assented to the mortgagors cutting the timber and selling the same to appellant without recognizing its rights as mortgagee.

It is well settled that the possession of the mortgagor is not hostile or adverse to the mortgagee, and that the mortgagor can make no contract respecting the mortgaged property which would bind the mortgagee or prejudice his rights. The mortgagors could not bind the bank by any representations, if they made any. There

was nothing done or said by the bank which indicated that it intended to release its mortgage on the timber, nor was it guilty of any conduct which operated as an estoppel in favor of appellant under the principles above announced.

Upon the whole case we think the bank is entitled to enforce its mortgage and to recover the value of the timber as it stood in the ground. Without recounting or reviewing the testimony on this point, it may be said that the chancellor allowed the bank to recover on this basis, and the amount allowed is sustained by a preponderance of the evidence.

On the question of the cross-appeal but little need be said. The mortgagors were legally in possession of the mortgaged timber, and there is nothing in the facts in this case which would constitute them a willful trespasser in cutting the timber. The mortgagors acted under a misapprehension of their rights in the premises, but there is nothing to bring the case within the rule announced in our cases making willful trespassers suffer some punishment for their depredation. *Central Coal & Coke Co.* v. *John Henry Shoe Co.,* 69 Ark. 302; *Griffith* v. *Ayer-Lord Tie Co.,* 109 Ark. 223; and *Warren Stave Co.* v. *Hardy,* 130 Ark. 547.

The case is more like that of *Foreman* v. *Holloway & Son,* 122 Ark. 341. In that case it was held that the mere fact that a mortgagor in possession cuts timber upon lands which he has mortgaged to another would not alone constitute him a willful trespasser in so doing; and that it would depend upon the facts and circumstances going to show whether his act in so doing was in good or bad faith, and whether or not it results in an injury to the mortgagee.

It follows that the decree will be affirmed.