FIRST NATIONAL BANK *v.* GODBEY & SONS.

Opinion delivered June 16, 1930.

1006

*W. P. Strait,* for appellant.

*Robert Bailey* and *E. A. Williams,* for appellee.

HART, C. J., (after stating the facts). The chancellor was justified in finding that the 22 bales of cotton in controversy belonged to the plaintiffs. It is true that the testimony is contradictory on this point, but we think that the chancellor was warranted in finding that a preponder-

ance of the evidence shows that the cotton belonged to the plaintiffs. Two employees of the firm and two of the members of the firm testified to that effect. It is true that their testimony was contradicted by that of Patterson, and by the further fact that the space in the cotton yard where the cotton was stored as it was purchased was marked in the name of Patterson, but the Godbeys testified that this was done for the sake of convenience, because the members of the firm were also buying cotton, and the cotton purchased by Patterson was stored at a place in the cotton yard in his name in order to distinguish it from the other cotton purchased by the plaintiffs. In all instances the plaintiffs furnished the money which paid for the cotton. Patterson did not handle any of the money. He would give the owners of the cotton tickets showing the price he had agreed to pay and the number of pounds bought, and the seller would carry this ticket to the store of Godbey & Sons, and the money would be paid there by a member of the firm.

It is next insisted that, even if the cotton belonged to the plaintiffs, that Patterson had a right to sell it. The evidence showed that some eleven other sales of cotton had been made by Patterson, but it also showed that Wylie Godbey supervised the selling of the cotton and received the proceeds of sale. Patterson was allowed to actually handle the cotton in the sale because he was to receive as his commission all profits derived from the purchase and sale of the cotton. Wylie and Buck Godbey both denied in positive terms that Patterson had any right to sell the cotton without the consent or supervision of some member of the firm. They are corroborated by the attendant circumstances. The cotton was purchased and stored in a cotton yard at Atkins. Patterson took the cotton without the knowledge of any member of the firm of Godbey & Sons and hauled it to Morrilton and deposited it in a compress warehouse and received receipts therefor. He carried these compress receipts to a bank and borrowed $1,500 on them. The bank did not

see the cotton at all. It was not necessary for Patterson to have hauled the cotton itself to Morrilton in order to borrow the money. At the time he hauled the cotton there, he owed the plaintiffs' firm over $2,000 and received the amount borrowed and refused to pay the plaintiffs any part of the amount which he owed them. The attendant circumstances justified the chancellor in finding that he had no actual authority to sell the cotton.

It is next insisted that he had apparent authority to sell the cotton. Apparent authority in any case is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing. It is such authority as a reasonably prudent person would naturally suppose the agent to possess from the attendant circumstances. *Ozark Mutual Life Assn.* v. *Dillard,* 169 Ark. 136; and *American Southern Trust Co.* v. *McKee,* 173 Ark. 147.

In the present case, it cannot be said that the plaintiffs knowingly held Patterson out as having authority to sell the cotton which he purchased for them. It is true that he had actually sold the cotton, but the sale had been made under the supervision of Wylie Godbey, and the proceeds of sale were paid to the plaintiffs because they had furnished the money for the purchase of the cotton. A preponderance of the evidence shows that the plaintiffs did not hold out Patterson as having authority to do anything except to buy cotton for the firm, and it is well settled that one dealing with an agent without inquiring of the principal his authority does so at his peril. There is no testimony in the record tending to show that the bank knew any facts or circumstances which would lead it to believe that the plaintiffs held out Patterson as having authority to sell cotton for them. On the other hand, the officer of the bank who conducted the transaction for it with Patterson merely asked the latter if the cotton belonged to him. He had the compress warehouse receipts for it, and they supposed from that fact and from his statement that the cotton belonged to him and that

he had the right to sell or pledge it, and they did not lend him the money on it under any sort of belief that he was acting for the plaintiffs or anyone else but himself. It is a fundamental principle of law that a principal can only be bound by the acts of his agent coming within the real or apparent scope of his authority. *Ozark-Badger Co.* v. *Roberts,* 171 Ark. 1105.

It is next contended that the plaintiffs are estopped from recovering from the bank by the circumstances in the case. We do not think that it can be said in any sense that the plaintiffs are prevented by equitable estoppel from asserting their rights as against the bank as the purchasers of the cotton in controversy. The plaintiffs did nothing whatever to mislead the bank, and did not in any sense by word or conduct induce it to purchase or lend money on the 22 bales of cotton in question. While mere silence may operate as an estoppel in equity, in order to constitute such silence as an estoppel, there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining the silence must have been in a situation to know that some one was relying thereon to his injury. *Baker-Matthews Lumber Co.* v. *Bank of Lepanto,* 170 Ark. 1146; *American Southern Trust Co.* v. *McKee,* 173 Ark. 147; and *Merchants' & Planters' Bank* v. *Citizen's Bank of Grady,* 175 Ark. 417.

The whole principle of equitable estoppel is that when a man has done an act or said a thing and another person, who had a right to do so, has relied on that act or word and will be injured if the former can repudiate the act or recall the word, it shall not be done. In the case at bar, the plaintiffs did nothing that would induce the bank to lend the money to Patterson on the faith that he had the right to handle the cotton for them. In fact they were wholly ignorant that he had done so. A member of the firm had gone to Morrilton to see about the cotton as soon as the plaintiffs learned that Patterson

had hauled it there. Patterson stated he had not sold the cotton but had merely left the compress receipts in a bank. That showed that he had already pledged the compress receipts to the bank, and had received the loan of $1,500 before the plaintiffs knew anything about it. Indeed, the officer of the bank who acted for it does not claim that he was in possession of any facts which would have induced him to believe that Patterson had authority to act for the plaintiffs or any one else in the matter. The bank lent Patterson the money on the theory that the cotton belonged to him. They relied entirely on his statement about the ownership of the cotton, and on the fact that he had the compress receipts in his possession. The fact that he had the compress receipts in his possession added nothing to the transaction under the circumstances of the case. He had hauled the cotton to Morrilton from Atkins without the permission of the owners of it, and had secured the compress receipts on the credibility that he owned the cotton. He had no authority to deliver these receipts to the bank unless the cotton belonged to him or unless he had authority from the owners of it to deliver the receipts to the bank, and pledge them for a loan.

Therefore the decree will be affirmed.