**HOWE COAL COMPANY, a corporation, Plaintiff,**

**v.**

**PRAIRIE COAL COMPANY, a corporation, and Gordon-Miles Mining Company, a corporation, Defendants, Sterlin Hurley et al., Additional Defendants.**

**No. FS–72–C–74.**

United States District Court, W. D. Arkansas, Fort Smith Division.

Aug. 27, 1973.

**1118**

J. H. Evans, Warner, Warner, Ragon & Smith, Ft. Smith, Ark., for plaintiff.

Sam Sexton, Jr., Ft. Smith, Ark., for Sterlin Hurley, Bobby G. Emery, Earl A. Bell, and Ozark Real Estate Co.

## STATEMENT

JOHN E. MILLER, Senior District Judge.

It is necessary to a clear understanding of the controlling and material facts in this case that the pleadings filed and the action taken by the court be stated chronologically.

On November 20, 1972, Howe Coal Company (Howe), a Missouri corporation, filed its complaint against Prairie Coal Company (Prairie), an Arkansas corporation, in which it alleged that on or about April 26, 1972, defendant purchased from plaintiff certain machinery and equipment specifically described in Exhibit A to the complaint for the sum of $176,420.22. The machinery and equipment were delivered to the defendant during the last part of May and the first part of June 1972. Plaintiff demanded payment and defendant failed and refused to pay. Summons was issued in due form on the complaint and served on November 24, 1972, on Earl A. Bell, an officer of Prairie, and also the agent for service of process.

On January 5, 1973, Prairie filed answer in which it specifically denied that it had purchased the property as alleged in the complaint.

On January 16, 1973, plaintiff filed its petition for preliminary injunction to enjoin and restrain the defendant from selling, mortgaging or in anywise dis-

posing of or removing the property listed in Exhibit A to the complaint.

On January 23, 1973, the court entered an order restraining Howe and Prairie, its officers, servants, agents and employees, pending a hearing on the merits or until the further orders of the court from selling, mortgaging, or disposing of in any manner any of the property involved herein.

On January 26, 1973, plaintiff filed an amended complaint against Prairie and against Gordon-Miles Mining Company, a Minnesota corporation, of which Earl A. Bell was the agent for service in Arkansas, in which plaintiff prayed for joint and several judgment against Prairie and Gordon-Miles, and in the alternative for an order directing the defendants to immediately deliver possession to the plaintiff of all machinery and equipment listed in Exhibit A to the original complaint.

Summons in due form was issued and served upon Earl A. Bell, agent for service of Gordon-Miles on January 31, 1973.

On February 23, 1973, Prairie and Gordon-Miles filed answers to the amended complaint and denied that a sale was ever consummated as alleged in the original and amended complaint, and said defendants prayed that the suit be dismissed. The defendants filed a demand for jury trial but the demand was withdrawn, and the case proceeded to a trial to the court.

On May 11, 1973, the case was tried upon the issues made by the pleadings then on file. At the conclusion of the trial the court found that no sale occurred or took place between the plaintiff and Prairie and Gordon-Miles, or either of them, and that title and ownership of the machinery and equipment was vested in plaintiff. Upon that finding, the court adjudged that defendants Prairie and Gordon-Miles were wrongfully withholding possession of said equipment and that plaintiff was entitled to immediate possession of said equipment, and Prairie and Gordon-Miles were enjoined and restrained from selling, mortgaging or using or disposing of any of the equipment, and from in any way interfering with the removal of said property by plaintiff.

Following the entry of the above May 11, 1973, judgment, the plaintiff Howe dispatched trucks to the mine of Prairie near Clarksville, Arkansas, with instructions to the drivers to obtain and return the mining equipment to plaintiff's place of business in Heavener, Oklahoma. They were able to obtain a portion of the equipment, but found that the employees of the defendants, either Prairie or Gordon-Miles, or both, had placed some of the equipment in the mine a short time after it was delivered during the latter part of May and the first of June 1972. The employees of the additional defendant Ozark Real Estate Company refused to allow the employees of Howe to enter the mine and remove the property that had been placed therein on the ground that the equipment had become real property and the title vested in Ozark. When faced with this situation, the drivers of the trucks returned to Heavener, Oklahoma, without the equipment that had been placed in the mine.

### Pleadings Filed by the Parties Subsequent to May 11, 1973

On June 14, 1973, the court, upon motion of plaintiff, entered an order authorizing the plaintiff to make additional parties defendants for the purpose of determining whether the additional defendants should be enjoined and restrained from interfering with the plaintiff's action in obtaining possession of the equipment that had been placed in the mine, and for any damages which plaintiff may sustain due to any wrongful acts on the part of the additional defendants. The petition for injunction was filed the same day.

On July 3, 1973, the additional defendants, Sterlin Hurley, Bobby G. Emery, Earl A. Bell and Ozark Real Estate Company (Ozark), filed their answer to the petition for injunction and damages and a counterclaim against Howe. In

the counterclaim they alleged that Ozark had "enjoyed a lessor-lessee relationship with the Prairie Coal Company on lands owned by the Ozark Real Estate Company and leased to the Prairie Coal Company in Johnson County, Arkansas."

In paragraph 3 of the counterclaim it was alleged:

"(3) During the year 1972, the Prairie Coal Company purchased from the Howe Coal Company, certain mining equipment which equipment was installed in mines existent on the premises owned by Ozark Real Estate Company and leased to Prairie Coal Company. By virtue of the installation, such equipment became attached to, affixed to, and a part of the real estate owned by Ozark Real Estate Company."

It was further alleged:

"(5) Howe Coal Company, under a spurious judgment fraudulently obtained through a stipulation with Gordon-Miles Mining Company, seeks to remove from the premises of Ozark Real Estate Company, the fixtures described above. The said property has become affixed to and a part of the real estate and is not subject to removal and the attempts by Howe Coal Company to attach, remove or otherwise deal with property which has become affixed to, and a part of the real estate owned by the Ozark Real Estate Company constitutes a slander to the title of Ozark Real Estate Company in and to its real estate.

"(6) The fraud practiced by Gordon-Miles Mining Company and Howe Coal Company upon this Court in the obtaining of the judgment in the above styled and captioned case consisted of knowingly and wilfully falsely representing:

"(a) That Howe Coal Company had not sold Machinery to Prairie Coal Company;

"(b) That Gordon-Miles Mining Company had the valid right to cause Prairie Coal Company to enter into a stipulation; .

"(c) That Miles Kernaghan was a proper officer of Prairie Coal Company;

"(d) That none of the equipment sought to be obtained had been affixed to or made a part of the lands of Ozark Real Estate Company.

"(7) Ozark Real Estate Company states that each of the allegations above set forth were false and were known to be false to Gordon-Miles Mining Company and Howe Coal Company at the time of such statement to the Court and that such knowingly, false and fraudulent statements prompted the Court to approve the judgment upon which Howe Coal Company presently seeks to rely.

"(8) Ozark Real Estate Company states that the removal of machinery which has become affixed to its real estate would cause irreparable harm and injury to the Ozark Real Estate Company property for the reason that the removal of such equipment would cause or permit flooding of mines located upon the property and would cause presently valuable coal deposits of the value of some several hundred thousand dollars to be rendered worthless."

For its counterclaim, Ozark prayed that the judgment heretofore entered in this case be declared null, void, set aside and held for naught; that the title of Ozark to the machinery which has become affixed to the real estate of Ozark be declared free of any claim or lien of Howe and that Ozark recover damages for trespass upon its real estate by the trucks of Howe.

The additional defendants also demanded a trial by jury as to all issues in the case.

On July 11, 1973, the plaintiff filed its answer to the counterclaim of the additional defendants praying that the counterclaim be dismissed and that "its petition for injunction and damages filed against the additional defendants on June 14, 1973, be granted."

On July 26, 1973, the court filed a memorandum and order denying the demand of the additional defendants for a jury trial on the allegations of fraud and the question of whether any of the equipment had become a fixture. In the memorandum the court said:

"The additional defendants were not parties to the suit at the time the judgment was rendered by this court on May 11, 1973, in favor of plaintiff and holding that the plaintiff was entitled to the immediate possession of all of the property. They make three principal contentions in their counterclaim: (1) that the judgment of May 11, 1973, is void and of no effect; (2) that the lease held by the Prairie Coal Company was terminated by the filing of an involuntary petition in bankruptcy on June 8, 1973; and (3) that by virtue of the installation of the equipment in the mine, it became affixed to and a part of the real estate owned by the Ozark Real Estate Company.

"It is necessary to determine the first contention whether the judgment of May 11, 1973, is a valid judgment. If it is a valid judgment, then the court would reach the second contention, that is, the effect of the filing of the involuntary petition for bankruptcy. The petition was filed almost one month subsequent to the date of the judgment, and, as a matter of fact, the records of this court disclose that there has been no order entered on the petition for bankruptcy filed by the creditors of the Prairie Coal Company. Then the court would determine whether the equipment was fixtures and became a part of the real property or whether it remained the property of the lessee."

After a full consideration of the record and allegations in the various pleadings that were before the court at that time, the court found that it was unnecessary to consider the contention relative to the filing of an involuntary petition in bankruptcy on June 8, 1973. Such a petition was filed but no service was had on anyone, and so far as the merits of this case is concerned, no issue was presented in reference thereto. The court held that "the claim of plaintiff for permanent injunction enjoining and restraining the additional defendants from interfering with the plaintiff's right to remove the equipment from the premises is a question that under the law should be tried by the court and not by a jury," and that the "issue of fraud and the right of removal will be determined by the court, leaving only a claim for damages should the parties desire to assert such claim or claims after the court has determined the other questions." The case was tried to the court without a jury on August 7, 1973, on the issue of fraud and the right of plaintiff to recover the equipment that defendants placed in the mine.

### Findings of Fact

There is no dispute as to any material fact.

On January 6, 1966, Ozark, of which Mr. Hurley, President of the Farmers National Bank of Clarksville, is an officer and the principal shareholder, leased to Prairie the exclusive right, license and privilege to enter upon and mine coal in, upon and under certain lands described in the lease. The lease was for a term of 5 years "from and after the date hereof and as long thereafter as mineable coal may be mined from said above described lands, and/or the advance royalty provided for herein is being paid and the terms of the lease are being complied with. It provided for the payment of certain royalties by the lessee, and that lessee would make certain improvements in the mines then in existence or to be opened on the lands; that the rights granted the lessee are personal and shall not be assigned or sublet without the consent of the lessor in writing first had and obtained. Section 13 of the lease provides:

"In the event of failure on the part of the lessee to keep the provisions of this lease, including the payment of royalty when due as provided herein,

the lessor may upon 30 days notice in writing served upon the lessee, or any officer or stockholder, by registered mail, addressed to said lessee at Clarksville, Arkansas, or by posting notice on the office of the lessee at said coal mine, declare a forfeiture of this lease; and, if at the end of said period of 30 days, the lessee has not remedied its default, the lessor may enter into and upon said premises and expel the lessee therefrom without process of law."

On December 30, 1969, Congress enacted the Federal Coal Mine Health and Safety Act, 30 U.S.C.A., § 801 et seq. The Act requires that inspections of mines be made from time to time, and the operators are required to meet the health and safety regulations promulgated under the Act. Evidently the mine did not comply with the provisions of the Act, and it was necessary to make certain changes and to obtain certain additional equipment. About that time the stockholders of Prairie were contacted by the President of Gordon-Miles, who expressed a desire to purchase the equipment and rights under the lease. Accordingly, on August 27, 1971, the stockholders of Prairie entered into an escrow agreement with Gordon-Miles and the Farmers National Bank as escrow agent. Under the agreement, which was never recorded, the buyer, Gordon-Miles, executed and delivered to the seller, Prairie, its promissory note payable to the escrow agent in the principal amount of $280,000, payable at the rate of $70,000 per year, plus accrued interest, on September 1, 1972, 1973, 1974 and 1975. Following the execution of the escrow agreement and the delivery of the capital stock of Prairie by the then stockholders, Prairie and Gordon-Miles executed and delivered a chattel mortgage to said former stockholders securing the payment of the promissory note of $280,000. The first payment was due as above stated on September 1, 1972. At the time of the sale of the capital stock there were eight stockholders, including Mr. Bell and Mr. Emory, who were the chief officials of the corporation.

Following the execution of the escrow agreement and the chattel mortgage, Mr. Miles Kernaghan, President of Gordon-Miles, was also elected President of Prairie, and immediately withdrew from the Farmers National Bank the deposits that were being carried under the name of Prairie. The mines had been operated since the execution of the lease by the stockholders of Prairie under the management of Mr. Earl A. Bell, one of the stockholders, and the operation was continued with Bell as mine manager, but Kernaghan was the general manager since he was President of Prairie and Gordon-Miles.

The record does not disclose when the inspection of the mine was made under the provisions of the federal Act, but it was definitely established that it was necessary to procure additional equipment and to make certain changes to meet the requirements of the federal Act. Therefore, the mining equipment of a total value of $176,420.22 was obtained from the plaintiff and was delivered to the mine site during the latter part of May and early part of June 1972. At that time there had been no default by Gordon-Miles on the note that had been executed in payment of the capital stock of Prairie, but all parties knew after the federal Act became effective that the operators would be required to meet the standards set forth in the Act, and on August 11, 1972, Mr. Sam Sexton, Jr., attorney for Ozark (Mr. Sterlin Hurley), by registered mail to Prairie stated that his client "hereby serves notice of default and intent to terminate said lease in 30 days from this date." The reasons assigned were (a) failure to pay the royalty; (b) failure to account for coal mined from the leased premises; and (3) failure to furnish required mine maps showing the areas which had been mined out, such failure continuing more than 12 months. There was no further action taken, and the lease was not in fact terminated by Ozark and Mr. Hurley and Prairie and

Gordon-Miles remained in charge. At that time, August 11, 1972, the mining equipment had been delivered to the mine site and some of it had been placed in the mine to comply with the provisions of the federal Act.

Prairie and Gordon-Miles were fully aware of the default of September 1, 1972, but made no move to pay for or to return the mining equipment to the plaintiff, and the plaintiff on November 20, 1972, filed its complaint against Prairie and other proceedings followed as hereinbefore set forth.

Mr. Sexton is an eminent attorney and has many clients. The former stockholders of Prairie and Mr. Hurley were in contact with him from time to time prior to and after the filing of the suit on November 20, 1972. They depended upon Mr. Sexton for advice as to what to do about the lawsuit. On December 12, 1972, Prairie, by Jack V. Fogarty, Secretary of Prairie, wrote Mr. Sexton a letter on stationery of Gordon-Miles of Beverly Hills, California, and advised him of the commencement of this suit and that Warner, Warner, Ragon & Smith were designated as the local attorneys for the plaintiff. Service of process was had on Earl Bell, and an answer was required by December 14, 1972. "However, due to an unfortunate oversight in this office, our Los Angeles counsel was not apprised of the matter in sufficient time to allow for our contacting your office to request your assistance as local counsel." The Los Angeles attorney requested a ten-day delay in the filing of the answer, and the letter concluded by stating to Mr. Sexton:

"Would you be good enough to telephone this office in regard to your availability so that we may take appropriate steps to answer this lawsuit without further delay. Thank you very much for your attention and consideration to this matter."

Since Mr. Sexton was fully advised of what had occurred between Prairie and Gordon-Miles and the possible effect on the welfare of the former stockholders

of Prairie and its lessor, Ozark, his clients, he rightfully felt that he could not represent Gordon-Miles, and he contacted Mr. G. Alan Wooten, a member of the firm of Harper, Young & Smith of Fort Smith, and Mr. Wooten filed the first answer of Prairie on January 5, 1973. The record as heretofore set forth discloses the other actions by Mr. Wooten in a good faith effort to represent the defendants. He received no cooperation from any of the former stockholders of Prairie or from the officials of Gordon-Miles. In fact, Mr. Kernaghan, the President, refused to give his deposition or to attend the trial of May 11, 1973. Mr. Wooten withdrew as counsel for Prairie and Gordon-Miles on June 22, 1973.

Prior to the entry of the judgment of May 11, 1973, Ozark, Sterlin Hurley, Bobby G. Emory and Earl A. Bell were not formal parties to the litigation, but they were fully advised of the litigation and of what the consequences thereof might be and yet took no action whatsoever. At all times they relied upon the advice of Mr. Sexton to await the termination of the litigation over the ownership of the equipment that had been delivered to the mine by the plaintiff and accepted by it. They only appeared in response to the petition of plaintiff for an injunction enjoining them from in any way interfering with the right of plaintiff to remove the equipment from the mine in accordance with the judgment of the court of May 11, 1973.

*The Applicable Law and Conclusions of the Court*

■■ The allegations of fraud in the procurement of the judgment of May 11, 1973, were not sustained in any degree. No evidence tending to establish fraud as alleged was introduced, and under the undisputed facts, the additional defendants are estopped and are bound by the judgment.

The plaintiff is entitled to restitution of all of the mining equipment that was delivered to Prairie and to Gordon-

Miles. Restatement of the Law of Contracts, § 354, et seq.

In Weiner v. Bank of King of Prussia (E.D.Pa.1973), 358 F.Supp. 684, the court at page 704 said:

"The general rule is that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' Restatement of Restitution, Section 1 (1937), quoted with approval in General Casmir Pulaski Bldg. & Loan Assn. v. Provident Trust Co., 338 Pa. 198, 202, 12 A.2d 336 (1940). See also Meehan v. Cheltenham Township, 410 Pa. 446, 451, 189 A.2d 593 (1963)."

The case of Adams v. Wood (1917), 128 Ark. 441, 194 S.W. 849, was a partition suit wherein the appellant Adams, who owned an interest in the property, was named as a party plaintiff. Adams had not authorized the suit to be brought but learned of its pendency shortly after the suit was commenced, but took no steps whatsoever and let the case proceed to a final decree. He then filed the suit to set aside the decree and the court held that he was estopped to do so. On page 444 of 128 Ark., on page 849 of 194 S.W. the court said:

"Conceding that the original suit for partition was instituted without authority from appellant, there is abundant evidence in the record establishing the fact that during the pendency of the action appellant was apprised of its pendency and acquiesced in its prosecution. At any rate, he took no steps to repudiate or discontinue the action which he knew was being prosecuted in his behalf as one of the plaintiffs. Under those circumstances he is estopped, after the decree and sale of the land, to claim that the decree is void because he had not authorized the institution of the suit."

In Jones v. The National Bank of Commerce of El Dorado (1944), 207 Ark. 613, at page 621, 182 S.W.2d 377, at page 381, the court said:

"'A person who, with knowledge of the facts and of his rights, assents to, * * * judicial proceedings without objection is ordinarily bound by such proceedings as against one who has been misled to his injury.' The same rule is announced in these cases: First National Bank v. Farmers' & Merchants' Bank, 159 Ark. 384, 252 S.W. 34; Adams v. Woods, 128 Ark. 441, 194 S.W. 849; Walker v. L. Maxcy, Inc., 103 F.2d 24."

In Thomas v. Spires (1929), 180 Ark. 671 at page 676, 22 S.W.2d 553, at page 555, the court said:

"As a general rule an estoppel *in pais* may be set up in actions at law as well as in suits in equity. 21 C.J. 1118, § 121; and Pomeroy's Equity Juris. (3d ed.), vol. 2, § 801; Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618, and Barnard v. German-American Seminary, 49 Mich. 444, 13 N.W. 811. In that case the Supreme Court of Michigan, speaking through Mr. Justice Cooley, held that estoppels *in pais* are called equitable estoppels because they arise upon facts which render their application, in the protection of rights, equitable and just, and that they are just as readily and fully recognized in courts of law as in courts of equity."

In First National Bank v. Godbey & Sons (1930), 181 Ark. 1004 at page 1010, 29 S.W.2d 272, at page 275, the court said:

"While mere silence may operate as an estoppel in equity, in order to constitute such silence as an estoppel, there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining the silence must have been in a situation to know that some one was relying thereon to his injury. Baker-Matthews Lumber Co. v. Bank of Lepanto, 170 Ark. 1146, 282 S.W. 995; American Southern Trust Co. v. McKee, 173 Ark. 147,

293 S.W. 50; and Merchants' & Planters' Bank v. Citizen's Bank of Grady, 175 Ark. 417, 299 S.W. 753."

In Illinois Standard Mortgage Corp. v. Collings (1933), 187 Ark. 902, at page 906, 63 S.W.2d 342, at page 344, the court said:

"Equity holds a person to a representation made or position assumed, where otherwise inequitable consequences would result to another who has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity. It needs neither a consideration nor a legal obligation to support it. See § 19, vol. 10 R.C.L., p. 689. Again, acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, would and should create an estoppel. See § 22, 10 R.C. L., p. 694. There can be no question in the instant case but that knowledge of Brooks was knowledge to the Young Men's Building & Loan Association."

Ozark and Mr. Hurley, as well as all of the former stockholders of Prairie, had full information and were in privity with each other.

In Fouke v. Schenewerk (5 Cir. 1952), 197 F.2d 234, the court at page 236 said:

"Estoppel applies only to those in privity. Donor and donee are in privity of estate, as are a lessor and lessee; and heir is in privity with his ancestor; an executor is in privity with his testator; a trustee is in privity with his trustor; * * *."

In Phoenix Mutual Life Ins. Co. of Hartford v. Reich (W.D.Pa.1948), 75 F. Supp. 886, the court at page 892 said:

"One who has notice of a replevin suit brought to determine the ownership of property, and authorizes an attorney to take such action as may be necessary, or consults an attorney generally in connection therewith, is concluded by the result of the litigation. Where the decree of a court of competent jurisdiction has passed upon a question in which different persons are interested, such decree is conclusive against all parties to the controversy who had a right and an opportunity to be heard. Rice, Appellant, v. Braden, 243 Pa. 141, 149, 89 A. 877."

The only claim now asserted by the additional defendants Emory and Bell is that the judgment of May 11, 1973, is void because of fraud, and since it is without merit, it leaves only for consideration the counterclaim of Ozark which also claims the judgment is void, but it is not necessary to consider further the claim of fraud.

Ozark by its counterclaim contends that the equipment which was placed in the mine has become affixed to the real estate and that the said machinery should be declared free of any claim of the plaintiff.

In the judgment of May 11, 1973, the court found that Prairie and Gordon-Miles were wrongfully withholding possession of the equipment and adjudged that the ownership and title of all of the equipment was vested in plaintiff, and that the plaintiff was entitled to the immediate possession of said equipment, and Prairie and Gordon-Miles were ordered to forthwith deliver possession of the said equipment to the plaintiff.

The only part of the equipment that has not been recovered consists of pumps and certain accessories for the operation of the pumps in the mine, and that is the equipment that Ozark claims was attached to the real property and cannot be removed.

It is not disputed that the employees of Prairie, as lessee, placed the pumps and other accessories in the mine contrary to the intention of the parties

when the machinery and equipment was delivered to the mine without any definite arrangements for payment.

The lease executed by Ozark and Prairie covered only the real property upon which the mine was situated. Under the terms of the lease Prairie was to open the mine or mines and equip them for operation, which it did and continued to do for a great many years without difficulty until the enactment of the federal Act heretofore referred to became operative.

The equipment in the mine was personal property. In 35 Am.Jur.2d, Trade Fixtures, § 39, p. 730, it is stated:

"Generally speaking, items of personal property brought upon land by a tenant, which are necessary to carry on the trade or business to which the land will be devoted, constitute 'trade fixtures.' The doctrine of trade fixtures finds its principal application in the relationship of landlord and tenant, and under the doctrine, as a matter of public policy or implied contract, trade fixtures remain the personal property of the tenant or occupant of the land and are generally removable by him at the expiration of his term of occupancy, at least in the absence of an express agreement to the contrary.

"The right of a tenant to remove trade fixtures is limited by the fact that he must not substantially injure the freehold while the fixtures are being removed, but the mere fact that the trade fixtures must be taken apart or even wrecked to remove them from the premises does not impair the tenant's right of removal."

In National Bank of Wichita v. Spot Cash Coal Company, (1911) 98 Ark. 597, at page 606, 136 S.W. 953, at page 957, the court said:

"Under the mining law, mining machinery, fixtures, and appurtenances placed upon the property by the lessee are not regarded as fixtures that pass with the soil and lease as appurtenances, but as personal property of the lessee that may be removed by him in the absence of an express stipulation in the lease to the contrary. 2 Snyder on Mines, § 1320; White on Mines & Mining Remedies, § 135."

See, also, Bache, Rec., v. Central Coal & Coke Co. (1917), 127 Ark. 397, 192 S. W. 225, which cited with approval the National Bank of Wichita, supra.

In In re Factory Homes Corporation, Bankrupt (W.D.Ark.1971), 333 F.Supp. 126, the court at page 130 said:

"The Arkansas cases previously cited distinguish 'trade fixtures' from 'fixtures' and allow the property to be treated as personalty."

See, also, 36-A C.J.S. Fixtures § 38, p. 687 et seq.

■ Trade fixtures are normally treated as personalty and is merely equipment under Ark.Stat.Ann., § 85-9-313 (Uniform Commercial Code), which provides in paragraph (1) that the law of this State other than the Act determines whether and when other goods become fixtures.

■ There was some contention at the trial that under the provisions of § 85-9-313 even if the pumps and other equipment installed in the mine remained trade equipment, the person removing them must reimburse the owner of the real estate, and that the owner may refuse to grant permission to remove until adequate security has been given him to pay the cost of repair of any physical injury "but not for any diminution in value of the real estate caused by the absence of goods removed."

In the opinion of the court the statute does not require the owner of the property, in this instance the plaintiff Howe, to pay any damages or to execute a bond guaranteeing the payment of such damages before removal. Ozark was not a secured party, and under the law of Arkansas has no claim whatsoever upon the

equipment that was placed in the mine, and the plaintiff is entitled to an injunction restraining all the additional defendants from in any manner interfering with plaintiff, its agents and employees, from removing said property from the mine in compliance with the provisions of the judgment of May 11, 1973.

The plaintiff also asserted a claim to recover damages for the wrongful acts of all defendants, including the additional defendants, in refusing to deliver the equipment in accordance with the provisions of said judgment of May 11, 1973. Likewise, Ozark in addition to its claim of ownership of the equipment contends that it should recover damages for trespass upon its real estate occasioned by the trucks of Howe entering upon and trespassing upon its real property without any right or permission to do so.

As heretofore outlined in the order of the court of July 26, 1973, if the parties desire, after the removal and return of the involved equipment, to prosecute their respective claims for damages, they may so advise the court, and the court will arrange for a trial to a jury on the question of their respective claims for damages.

Judgment is being entered today enjoining and restraining the defendants and the additional defendants, Sterlin Hurley, Bobby G. Emery, Earl A. Bell and Ozark Real Estate Company, from in any manner interfering with the plaintiff, its agents and employees, from removing said property from the mine in compliance with the provisions of the judgment of May 11, 1973, and dismissing all of the claims of the additional defendants, but reserving to the plaintiff and the additional defendant Ozark Real Estate Company the right to determine whether they, or either of them, desire to prosecute their respective claims for damages after the removal and return of the involved equipment. The court retains jurisdiction only for the purpose of permitting such election by the parties hereto within thirty days from the completion of the removal of said equipment.