Dan ROSELL *v.* PULASKI BANK
& TRUST CO.

79-9                                           582 S.W. 2d 1

Opinion delivered May 29, 1979
(Division I)

*Moses, McClellan, Owen & McDermott,* by: *Harry E. McDermott, Jr.,* for appellant.

*Cearley, Gitchell, Bogard, Mitchell & Bryant, P.A.,* by: *Michael W. Mitchell,* for appellee.

DARRELL HICKMAN, Justice. Dan Rosell, the appellant, sued the Pulaski Bank and Trust Company for $10,000 actual, and $50,000 punitive damages. The theory of Rosell's suit was that the bank had allowed a third party, Larry Coulter, to cash a $10,000 certificate of deposit that was being held by the bank for the benefit of Rosell. The chancellor held there was insufficient evidence of a valid escrow agreement or trust relationship between the bank and Rosell, and denied any relief to the appellant.

The facts of this case, mainly the actions of a bank

employee, Mrs. Mary Terry, bound the bank to honor the agreement between Rosell and Coulter, and the bank is estopped to deny liability. We reverse the chancellor's decree.

Rosell sold his rental business to Coulter in February, 1975, for $57,600.00. It was sold according to a written agreement and one of the terms of the agreement was that a $10,-000 certificate of deposit issued by the appellee bank would be assigned as security to Rosell for four years. The assignment and a copy of the contract were delivered to Mrs. Terry, a branch manager for the bank. The assignment is reproduced:

<u>ASSIGNMENT OF BANK DEPOSIT</u>

FOR VALUE RECEIVED the undersigned hereby conditionally assigns a $10,000.00 savings account in the Pulaski Heights Bank, being Account No. $CD \# A/$. The conditions of this assignment are that in the event the undersigned fails to make payments or defaults under the contract dated February 1, 1975, a copy of which is attached hereto, during the first four years of the contract, the $10,000.00 shall be paid to the assignee, Dan Rosell, to be applied against the purchase price.

If there is no default for a period of four years, the $10,000.00 and interest earned shall be the sole property of the undersigned. Undersigned further agrees that the $10,000.00 balance will be maintained and without any encumbrance, assignment, or lien except to Dan Rosell.

Undersigned agrees to execute any additional assignment that may be necessary to effectuate this assignment.

WITNESS my hand and seal this ___ day of February, 1975.

LARRY C. COULTER

STATE OF ARKANSAS )
)
COUNTY OF PULASKI )

    SUBSCRIBED AND SWORN to before me this 1st day of February, 1975.

_____
Notary Public

My Commission Expires:

    2-15-77

    Mrs. Terry received the assignment and a copy of the contract with a cover letter which reads:

Pulaski Bank & Trust Co.
Attn: Mrs. Terry
Grant at Kavanaugh
Little Rock, Arkansas 72207

    Re: Certificate of Deposit #A1
       Larry C. Coulter

Gentlemen:

    Enclosed is an Assignment executed by Larry C. Coulter concerning a Certificate of Deposit at your bank. Please place this Assignment in Mr. Coulter's file.

    If you have any questions, please do not hesitate to call me.

Yours very truly,

HARRY E. McDERMOTT, JR.

    Several months later, without any notice to Rosell, Mrs. Terry released the certificate of deposit to Coulter; Coulter defaulted on the contract with Rosell and there is no evidence of his whereabouts in the record.

Although Mrs. Terry testified she told Coulter the bank would not be a party to an assignment of a certificate of deposit between two individuals, her actions are totally inconsistent with that testimony. For example, part of her testimony is as follows:

. . .

Q. Well, then what happened?

A. Well, let's see. Let's see, Larry [Coulter] brought me in — it was two legal sized pages, some sort of an agreement between Mr. Rosell and Mr. Coulter, two legal sized typed pages that did require, you know, an officer of the bank's signature.

And I had been advised at the bank, *don't sign anything*. Do not acknowledge an assignment because we are not going to get involved.

So before I signed it, I read through it and all the legal jargon, you know, meant nothing to me. So I showed it to my boss George Loftus and he read through it. And he said, "It's okay, Lulu, they're not asking us to do anything. You can sign it. *So I did*. . . . [Emphasis added.]

First, she admitted receiving the assignment and contract. She knew it provided the certificate of deposit was to be held as security for the benefit of Rosell. Although she said she was instructed not to agree to act as an escrow agent or be a party to the agreement, she said she signed some instruments. In fact, she wrote the number of the certificate on the assignment. She said she did these acts after being assured by her superiors the bank was not bound. She placed the certificate of deposit in Larry Coulter's file, in an envelope with the other papers of Coulter, including the assignment and contract. She said she did this as a favor to Coulter after she had told him he should place it in a safety deposit box at the main branch.

She testified she was told not to acknowledge the receipt of the assignment in writing because it might bind the bank.

It is undisputed the bank never notified any party in writing it would not honor the assignment after it was received. The lawyer was never notified the assignment would not be recognized.

The appellee argues the appellant tried to make it an escrow agent without its consent. All of the disclaimers testified to by bank employees are inconsistent with the actions of Mrs. Terry. It is a classic case of equitable estoppel. Equitable estoppel, as it applies to this case, was defined in the case of *First National Bank* v. *Godbey & Sons,* 181 Ark. 1004, 29 S.W. 2d 272 (1930).

> While mere silence may operate as an estoppel in equity, in order to constitute such silence as an estoppel, there must be both the opportunity and the duty to speak, and the action of the person asserting the estoppel must be the natural result of the silence, and the party maintaining the silence must have been in a situation to know that some one was relying thereon to his injury.

All the bank had to do was to return the assignment and reject it. Instead, it kept it, filled in a blank space, and received the benefits of the certificate of deposit. But, more than that, it caused the certificate to be placed in Larry Coulter's file, with the assignment, thereby acknowledging the validity of the assignment. For these reasons, the bank is liable for later releasing the certificate to Coulter.

The decree of the chancellor is reversed and the cause is remanded with instructions to enter judgment in favor of Rosell for $10,000.00.

Reversed and remanded.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.